KIKI UNDIES CORP., Plaintiff, Appellant and Cross-Appellee,

v.

PROMENADE HOSIERY MILLS, INC., Defendant, Appellee and Cross-Appellant.

Nos. 543, 544, Dockets 32659, 32664.

United States Court of Appeals Second Circuit.

Argued April 23, 1969.

Decided May 29, 1969.

Charles R. Brainard, New York City (John A. Fogarty, Jr., W. Cullen MacDonald, and Kenyon & Kenyon, New York City, on the brief), for plaintiff, appellant and cross-appellee.

I. Walton Bader, New York City (Bader & Bader, New York City, on the brief), for defendant, appellee and cross-appellant.

Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge and WYATT, District Judge.*

ANDERSON, Circuit Judge:

This action was brought on March 15, 1966, by Kiki Undies Corp. against Promenade Hosiery Mills, Inc. for trade-mark infringement under the Lanham Act, 15 U.S.C. § 1051 et seq., and unfair competition. On March 23, 1966, the plaintiff moved for summary judgment or, in the alternative, for a preliminary injunction, and on November 22, 1966, the district court entered an order denying the mo-

* Of the Southern District of New York, sitting by designation.

**1098**

tions.[1] After trial the court entered judgment in which it dismissed both the plaintiff's complaint and prayer for an injunction against use of its Kiki trademark by the defendant and also the defendant's counterclaims and prayer for a declaration of its right to use such mark.[2]

There is no real dispute as to the facts. Plaintiff was incorporated in 1956 for the purpose of manufacturing and marketing nationally a lady's panty garment, for which plaintiff's president had obtained a patent based on novel design. Out of several hundred names submitted by an advertising agency, the name "Kiki" was selected as the name of the company as well as the trade-mark for the new product. The name "Kiki" was prominently displayed on plaintiff's business forms and letterhead.

Plaintiff hired a designer who created a distinctive product package, boldly displaying the label Kiki, which received the second place award in a 1956 design competition sponsored by the National Flexible Packaging Association. The label was copyrighted in December, 1956, for "women's undergarments" and the certificate of registration states that the label was first published and used on February 24, 1956. "Kiki" was registered by plaintiff as a trade-mark for ladies' panties in January, 1961. Since 1956 the plaintiff's products have carried a so-called "Kiki guarantee," which appears on each package of its goods.

During the same period, as the plaintiff's line of products has expanded, the word "Kiki" in various combinations has been employed on every item which the plaintiff has manufactured and sold. For example, about 1961 plaintiff began manufacturing and selling ladies' pajamas under the Kiki trade-mark. In March 1963, an additional and different line of panties was introduced and marketed under the registered trade-mark "Kiki Kontrol." In June 1963 plaintiff began selling ladies' girdles under the registered trade-mark "Kiki Magic." Since about 1959 plaintiff has sold, through department stores, a higher priced panty with the label "Kikini, exclusive design by Kiki Deluxe." At the time of trial it had in the design stage a line of panty hose to be distributed and sold under the Kiki mark.

More than 22,000,000 garments bearing the Kiki label were sold by the fiscal year ending April 30, 1966, and plaintiff's sales increased from about $250,-000 in 1956 to about $1,800,000 in 1968. It spent over $400,000 during those years in advertising the name "Kiki" for ladies' garments; and, in addition, it engaged in cooperative advertising of its Kiki products with retail stores. Advertising expenditures, including cooperative ventures, now run to almost $100,000 per year.

Defendant is a sales corporation which markets headbands, tights, and hosiery manufactured by its sister corporation, Arjay Manufacturing Co., Inc. Arjay and the defendant share an office, but the defendant has no showroom, and, with one exception, no salesmen. It markets its products under varying arrangements. It puts its tights in a transparent package, similar in size and shape to that of the plaintiff, and sells them, either without any trade name or with only the name of the retail store customer, or with the name "Jaunties" and, since about June 7, 1965, with the name "Kiki," depending apparently on customer preference.

The court below found that the defendant's first use of the "Kiki" mark was in 1963. The record shows, however, that the only evidence on this question was the statement in the June 1966 deposition of Bell, one of the defendant's officers, that it had been used about a year, which means that the first use by defendant of "Kiki" in connection with tights was in June of 1965. The only evidence as to the date of the first use by defendant of the mark "Kiki" on head-

---

1. The opinion of the district court, Cooper, Judge, is reported at 160 U.S.P.Q. 772.

2. The opinion below by MacMahon, Judge, is reported in 160 U.S.P.Q. 775.

bands was that such use had begun by the date of the deposition, which was June 7, 1966. Thus, the record discloses that the plaintiff had used its trademark "Kiki" for nine years and that the mark had been registered for four years before defendant's first use.

On January 15, 1965 the defendant applied for a trade-mark registration of the mark "Kiki" for tights, swimwear and sportswear in Class 39, the same class in which the plaintiff's mark is registered. By letter dated June 4, 1965 the Patent Office refused registration "because the mark, as applied to the goods of the [defendant] so resembles the marks [of plaintiff] as to be likely to cause confusion, or to cause mistake, or to deceive * * *."

Title 15 U.S.C. § 1114(1) provides a remedy for trade-mark infringement against:

"[a]ny person who shall, without the consent of the registrant—

(a) use in commerce any reproduction * * * or colorable imitation of a registered mark in connection with the sale * * * of any goods * * * on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive * * *."

In denying the motions for summary judgment and a preliminary injunction, Judge Cooper was of the opinion that the plaintiff's registered Kiki trade-mark was "a strong mark," that plaintiff's and defendant's marks were "virtually identical," and that there was "likelihood of confusion as to the source of origin." 160 U.S.P.Q. 773, 774. Nevertheless, he denied the motions because "* * * plaintiff * * * fails to show its own interest in precluding defendant's use, defendant's bad faith, or instances of actual confusion." 160 U.S.P.Q. at 774.

██ The decision after the trial (Mac-Mahon, Judge) rested on the following grounds: that the products of the plaintiff and the defendant were only remotely related; that the plaintiff failed to prove that its products and those of the defendant were marketed through the same outlets; that the evidence was insufficient to support a finding of actual confusion; and that, in the absence of proof by the plaintiff of intent on the part of the defendant to obtain a free ride, the court could not find that the defendant acted in bad faith. We are of the opinion that these conclusions rest upon findings not reasonably supported by the evidence or are erroneous in their assumptions of law.

This court in the case of Polaroid Corporation v. Polarad Electronics Corp., 287 F.2d 492, 495 (2 Cir. 1961), adopted a method of approach to the decision of trade-mark cases dealing with non-competitive products, where the prior owner's right to enjoin use of a similar mark was at issue. It called for the consideration of various factors: the strength of the mark; the degree of similarity between the two marks; the proximity of the products; the likelihood that the prior owner would bridge the gap; actual confusion, the reciprocal of the defendant's good faith in adopting its own mark; the quality of defendant's product; and the sophistication of the buyers. The court went on to say that this was not an exclusive or definitive catalogue but, where circumstances required, the court might have to take still other variables into account. This method of dealing with such cases was reaffirmed in Triumph Hosiery Mills, Inc. v. Triumph Internat'l Corp., 308 F.2d 196, 198 (2 Cir. 1962).

These factors are variable and relative and no single one, because of its presence or absence, is, in itself, determinative of a case. Rather, the method of approach requires the trial court to consider and weigh the evidence relative to each of these points and such other points as, in the particular circumstances before it, the court finds applicable; then, from a balancing of the conclusions reached on all of these factors, the court decides whether or not the parties are entitled to the relief or protection sought. The Polaroid approach was followed in Chandon Champagne Corporation v. San Marino Wine Corporation, 335 F.2d 531 (2 Cir.

1964); and in that case the court in addition to the *Polaroid* items considered the nature of the prior owner's priority; the prior owner's delay in asserting his claim; and the harm to the defendant as against the benefit to the plaintiff.

■■ A review of the *Polaroid* decision factors which are designed to be applied to non-competitive items, provides, in the light of the record in this case, convincing support for plaintiff's claim, particularly where, as here, most of the products are competitive and therefore more susceptible to confusion. Because the likelihood of confusion stems from the fact that the marks used by plaintiff and defendant are not only similar but identical, this court is in as good a position as the trial court to determine the question of probable confusion, J. R. Wood & Sons Inc. v. Reese Jewelry Corp., 278 F.2d 157, 158 (2 Cir. 1960); Miles Shoes, Inc. v. R. H. Macy & Co., Inc., 199 F.2d 602 (2 Cir. 1952), and we are satisfied that it is very great. The Kiki mark is obviously both fanciful and strong, denoting only the source or origin of the product;[3] panties, panty hose, girdles, pajamas, tights and headbands are within the broad category of women's apparel and, as stated above, panties and tights are in the same Patent Office classification. They are obviously closely related, serve at least some common functions and common consumers. Similar distribution outlets could, and quite naturally would, serve these products, and it is likely that all these items would be sold in the same departments of stores. The plaintiff is planning to introduce a line of panty hose which, despite statements by the lower court, and defendant to the contrary, will often be in direct competition with defendant's tights.[4]

■■ The fact that there was little or no evidence of actual confusion is of no significance because with identical

---

3. Cf. Chandon Champagne Corporation v. San Marino Wine Corporation, 335 F.2d 531 (2 Cir. 1964), in which this court held, at 536, Moet & Chandon's use of "Dom Perignon" to be a weak mark, "because of its historical or mythological reference to the invention of that [champagne]."

4. An actual design sample for panty hose was offered into evidence at the trial, together with testimony by plaintiff's president regarding future products, but the district court excluded both, stating, "I am not getting any of your future products." This evidence should not have been excluded. It was relevant to the issue of "bridging the gap," i. e., plaintiff's desire to extend its activities into a disputed area, Triumph Hosiery Mills, Inc. v. Triumph Internat'l Corp., 308 F.2d 196, 198 (2 Cir. 1962), and the exhibit should have been admitted even if it was limited to serving solely as an illustration for the witness' testimony.

The trial court said "Plaintiff is concerned here only with defendant's tights or leotards. * * * Plaintiff's sales manager conceded that defendant's tights could be worn as outer-wear while plaintiff's panties could not."
* * * * *
"But this argument [that tights and panty hose are competitive] assumes that plaintiff's panty hose are the equivalent of

defendant's tights. We cannot, on the basis of the evidence presented, agree. There was no testimony that panty hose and tights are equivalent. Indeed, panty hose show the leg through the material. Tights are opaque. The former can be worn only with a skirt or some other kind of covering, while the latter can be worn as outerwear."

The court claimed. to have made these findings on the basis of the testimony of Thorne, the plaintiff's sales manager. But the witness did not testify that defendant's tights could be worn as outerwear; he said he did not think a woman would normally wear a panty hose on the outside without a skirt but she could, " * * * that would be up to the option of the women"; he did not say that tights were identical with leotards. He made no comparison of the opaqueness or lack of it in tights as compared with panty hose, and the exhibits indicate ranges of variations in these characteristics in the different samples of each kind of garment. There is no question, however, that panty hose is an article of feminine apparel whose general use and purpose is sufficiently similar to the tights and leotards of the defendant as to make them competitive and if the defendant uses the mark "Kiki" on its products, confusion will be practically inevitable.

marks and similarity of use, there is great likelihood of confusion of source and in "the final analysis the decision must rest on the court's conviction as to possible confusion." Miles Shoes, Inc. v. R. H. Macy & Co., Inc., *supra*. The lower court found that there was no evidence of defendant's bad faith, but in so doing, it erroneously assumed that the burden of proof was on the plaintiff. In a case such as this, where the allegedly infringing mark is identical to the registered mark, and its use began subsequent to the plaintiff's trade-mark registration, the defendant must carry the burden of explanation and persuasion. Here, the defendant made no attempt to meet this burden other than by the reference in Bell's deposition to the Tiki Restaurant; but we hold this insufficient as a matter of law.[5] Unlike the defendants in Triumph Hosiery Mills, Inc. v. Triumph Internat'l Corp., *supra,* which had long used the word "Triumph" in Europe and which modified that word, which was plaintiff's United States trade-mark, by seeking to register as its mark "Distinction by Triumph of Europe," the defendant in the present case, which had expended little or nothing on advertising of its own, adopted exactly the same word as plaintiff's mark "Kiki," which the plaintiff had used and widely advertised for several years. The defendant persisted in its use in spite of the Patent Office's denial of its application to register Kiki as its own trade-mark on the ground of likelihood of confusion with plaintiff's products. But for the trial court's misconception as to burden of proof, a finding of bad faith could not

very well be avoided. As Judge Augustus Hand said in Miles Shoes, Inc. v. R. H. Macy & Co., Inc., *supra,* 199 F.2d at 603:

"Miles sought registration of its trade mark in 1945 when it had only been using it for about three months. Why it should have chosen a mark that had long been employed by Macy and had become known to the trade *instead of adopting some other means to identify its goods is hard to see unless there was a deliberate purpose to obtain some advantage from the trade which Macy had built up.*" (Emphasis added.)

The remaining two factors call for little more than bare mention. There is no evidence that defendant's product was inferior. The sophistication of the buyers is not documented, and, although we may assume an average group of buyers, the import of this factor is small indeed because of the fact that the marks are identical.

The balancing of the conclusions which must follow from these considerations point to only one determinative result and that is that the defendant is infringing the plaintiff's trade-marks; the plaintiff is, therefore, entitled to the relief sought.

The judgment of the district court is reversed with direction that the court enjoin the defendant from further use of the "Kiki" trade-mark in connection with ladies' garments or ladies' wearing apparel. The judgment of the district court dismissing the defendant's counterclaims is affirmed.

5. See Sears, Roebuck & Co. v. Johnson, 219 F.2d 590, 593 (3 Cir. 1955), where the court found that defendants' "All-State School of Driving" infringed plaintiff's "Allstate" mark for automobile accessories and insurance. The court said: "Although there is no direct evidence as to defendants' intent, this is only one of the factors to be considered, and it is not an indispensable requirement. Defendants remained silent as to their reasons for using the name All-State.

They say they did so because it was unnecessary for them to produce evidence when plaintiff had not proved its case. But their silence was nonetheless at their own peril, for they and not plaintiff had the burden of producing evidence on the question of intent; especially is this so where, as here, the name which they selected was practically identical to the one plaintiff had been using for over twenty years."