**KING RESEARCH, INC., Plaintiff,**

v.

**SHULTON, INC., Defendant.**

No. 67 Civ. 2474.

United States District Court,
S. D. New York.

March 5, 1971.

---

2. In the court's opinion, a further evidentiary hearing on this matter would serve no purpose.

Nemeroff, Jelline, Danzig, Paley & Kaufman, New York City, for plaintiff; Mitchell Jelline, New York City, of counsel.

Leo C. Krazinski, Suffern, N. Y., for defendant.

## OPINION, FINDINGS OF FACT and CONCLUSIONS OF LAW.

LEVET, District Judge.

This is a civil action for infringement of trademarks registered in the United States Patent Office, 15 U.S.C. § 1114, as amended, and for unfair competition, namely common law trademark infringement, and is joined with a substantial and related claim under the Act of July 5, 1946, 60 Statutes 437. This court has jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and 1338(b).

For some years, plaintiff has been in the business of manufacturing and selling various products, principally in the nature of cleaning and abrasive materials.

Plaintiff registered the trademark "Ship-Shape" in 1946; in 1949 it began to use the term to denominate a comb and brush cleaner which it claims to have advertised and promoted extensively since 1949. In addition to "Ship-Shape" plaintiff manufactures "Stax," a hair grooming preparation, "Dandricide," a hair rinsing solution, "Barbicide," a disinfectant for combs, and "Dy-Zoff," a product for removing hair dye stains.

Shulton, Inc., defendant, is a corporation engaged in the manufacture and sale of various kinds of grooming aids, principally for men.

On September 28, 1966, defendant filed an application at the Patent Office to register "SHIP SHAPE" as a "hair spray for men." Defendant marks its product under the general title of "Old Spice" and for years has used a sailing vessel as an additional trade symbol.

It is plaintiff's contention that, without consent, defendant has used, and continues to use, a copy of plaintiff's registered mark in the sale and advertisement of a hair grooming product and that such conduct has caused, and is likely to continue to cause, "confusion" so as to deceive purchasers as to the source or origin of its comb and brush cleaner.

The complaint thus requests an injunction against further infringement and certain further relief, including the recovery of money damages.

It is the contention of defendant that the product sold by plaintiff under the trademark "Ship-Shape" is unrelated to defendant's hair spray for men, such that the relief demanded is not warranted. In substance, defendant denies that there has been or will be any likelihood of confusion and, therefore, the relief requested is unwarranted.

After hearing the testimony of the parties and examining the pleadings, the exhibits and the proposed findings of fact and conclusions of law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff is a corporation of the State of New York with its principal place of business in the Borough of Brooklyn, City of New York. (3) [1]

2. Defendant is a corporation organized under the law of the State of New Jersey, doing business in the Borough of Manhattan, City of New York, and in the Southern District of New York. (3)

3. Plaintiff is the owner of a trademark "Ship-Shape" (fanciful rope design), registered in the United States Patent Office on November 4, 1947 under Registration No. 433,967, classified under the rubric of chemical detergents and soaps for cleaning walls, floors, metals, fabrics and the like. (Exs. 1 and H; 3)

4. Plaintiff is the owner of the trademark "SHIP SHAPE" (full caps) registered for detergents and soaps for hand dishwashing compound, machine dishwashing compound, comb and brush cleaner, egg cleaner used in hand cleaning of eggs and also used for machine cleaning of eggs and hatchery tray machine cleaning compound, the same registered in the United States Patent Office on June 14, 1955 under Reg. No. 607,415. (Exs. 2 and I; 4) [2]

---

1. Unless otherwise identified, numbers in parenthesis refer to pages in the trial transcript.

2. There is a slight discrepancy which should be noted for the record. At the trial defendant admitted the ownership of two of the three marks registered to plaintiff (3), failing to mention No. 607,415. On the pretrial order (p. 2), defendant admitted ownership of trademark No. 607,415. This slight discrepancy is of no consequence to the court's ultimate decision.

5. Plaintiff is the owner of the trademark "SHIP–SHAPE" (hyphenated, full caps) for detergent compounds for cleaning eggs, dairy and poultry equipment, combs and brushes, dishes and industrial uses, and registered the same in the United States Patent Office on November 14, 1961 under Reg. No. 723,978. (Ex. 3; 3)

6. Plaintiff has displayed the required statutory notice with its trademark. (Exs. 7, 8, 9; 4)

7. Defendant is the owner of the trademark "OLD SPICE" (full caps) for saponaceous compounds for cleaning hands, shaving cream, shaving sticks, shaving powder, etc. and registered the same in the United States Patent Office on March 16, 1937 under Reg. No. 344,285. (Ex. A; 3)

8. Defendant is the owner of the trademark "OLD SPICE" (script and design) for a line of cosmetic and toilet articles including hair salves, hair elixirs, dandruff preparations, hair tonics, hair oils, shampoos, hair dyes, etc. and registered the same in the United States Patent Office on September 26, 1939 under Reg. No. 371,371. (Ex. B; 3)

9. Defendant is owner of a number of trademarks of ship designs identified as SHIP GRAND TURK, SHIP FRIENDSHIP, SHIP RECOVERY, and SHIP MOUNT VERNON for a line of shaving creams, soaps, toilet and cosmetic articles, and registered the same in the United States Patent Office during the years 1939 and 1940 under Reg. Nos. 366,667, 372,770, 372,771, 374,559, 367,-143, 372,967, 372,970, 374,868, 368,426, 372,968, 372,969, and 374,369. (Exs. C1, C2, C3, C4, D1, D2, D3, D4, E1, E2, E3, and E4; 3–4)

10. Defendant conducted a search of the trademark "SHIP SHAPE" as to its availability for use on a hair spray for men, which search revealed two of plaintiff's three registrations, namely, Reg. No. 433,967 (Ex. 1) and Reg. No. 607,-415 (Ex. 2). Since defendant considered the goods in plaintiff's two registrations to be entirely different from defendant's proposed hair spray for men, defendant authorized an application to be filed in the United States Patent Office. (166–168)

11. On September 28, 1966, defendant filed application for registration of the trademark "SHIP SHAPE" (full caps) in the United States Patent Office for a hair spray for men under Serial No. 255,360, with a first date of use as September 13, 1966. (Ex. G; 169)

12. On June 12, 1967, defendant's application for "SHIP SHAPE" was passed for publication by the United States Patent Office with a publication date of July 4, 1967 in the OFFICIAL GAZETTE. None of plaintiff's "SHIP SHAPE" registrations was cited by the Examiner during prosecution of said application in the Patent Office. This application is still pending in the Patent Office, awaiting decision in the instant suit, in accordance with stipulation filed in the Patent Office. (Ex. G; 169–173)

13. On December 21, 1966, plaintiff's trademark counsel wrote a letter to defendant advising defendant of plaintiff's ownership of its three "Ship Shape" trademark registrations, presently in controversy. On January 12, 1967, defendant answered plaintiff's letter remarking that a search had been made and that two of its three registrations had been picked up but that, since the respective goods were entirely unrelated, confusion would be unlikely. (Exs. 5 and 6; 169–170)

14. On June 12, 1967, plaintiff commenced the prosecution of this suit, which included a motion for a temporary injunction. In an unreported memorandum decision filed August 2, 1967, Judge Tyler denied the motion upon a finding that there was no "substantial likelihood of public confusion" regarding the parties' respective goods. (J. Tyler memorandum decision, p. 4)

15. About August 1946, or in the fall of 1946, plaintiff's predecessor, Maurice King, doing business as King Products Company, sold a compound for cleaning decks of ships under the trademark

"Ship-Shape." The product was sold in 300, 350 pound drums to the United States Government. (64–67)

16. King Products Company was first operated from a private home located at 275–93rd Street, Brooklyn; about January 1947, the operation of the business was transferred to a plant located at 124–57th Street, Brooklyn and in the early 1950s it moved to its present address at 114–12th Street, Brooklyn, New York. (73–74)

17. Plaintiff first utilized the appellatin "Ship-Shape" in 1947 on a detergent which cleaned dishes and eggs. Plaintiff first marketed its comb and brush cleaner in 1949 and from its inception was named "Ship-Shape." (13)[3]

18. Plaintiff's "Ship-Shape" comb and brush cleaner consists of granules which, according to the package, purport to clean "brushes and combs, paint brushes, plastic aprons, capes and upholstery, chrome furniture, and venetian blinds." (Ex. 7, front of panel; 79) The package directs the consumer to dissolve the powder in water and thereafter "to soak soiled combs and brushes in the solution." (Ex. 7, back panel) Varied strengths are recommended depending upon the article to be cleaned.

19. "Ship-Shape" comb and brush cleaner is distributed in three sizes. The largest, a two pound package (Ex. 7), is sold to beauty parlors and barber shops; it is used by beauticians and barbers in the facilitation of their business and also is sold to their customers for use at home. (19)

Plaintiff also sells at retail packages in both 12 ounce (Ex. 8) and 4 ounce (Ex. 9) sizes through barber and beauty dealers and shops, to drug wholesalers and retailers, to "rack jobbers," supermarkets and novelty stores. (18)

20. Plaintiff for over twenty years has used the trademark "Ship-Shape" for its detergent product directed to in-animate objects and has applied distinguishing trademarks to its toiletry field, such as "Stax" for a hair dressing, "Dandricide" for an anti-dandruff rinse, "Dy-Zoff" for a hair color stain remover, and "Love & Kisses" for a protective hand cream. (Ex. 22)

21. Defendant produces a variety of cosmetics and grooming aids for men, including "SHIP SHAPE" hair spray, sold in a 7-ounce aerosol can. These goods are marketed through wholesale and retail drug stores, mass merchandisers, variety stores and department stores. (197)

22. Defendant first marketed its "SHIP SHAPE" hair spray for men (Ex. L) in January of 1967 on a national basis. In that year, defendant conducted a wide range of sales promotion activities, including advertising in various forms; in the years following, there have not been similar efforts. (Ex. N; 194)

23. Defendant has used its registered Ship designs on its toiletry products for over thirty years. (Exs. C1, C2, C3, C4, D1, D2, D3, D4, E1, E2, E3, E4, P–1; 215–216)

24. The evidence is devoid of any proof that defendant in adopting the name "SHIP SHAPE" intended to "palm–off" its goods as those of plaintiff.

25. There has not been, nor is there any appreciable likelihood of confusion as to the origin or source between plaintiff's comb and brush cleaner and defendant's hair spray for men. Specifically speaking, among the various disparities are the following:

1. The respective products are intended for different purposes;

2. They are consumed in a different manner;

3. They are non-competitive;

---

3. For the record it should be noted that there is some discrepancy as to the date that the comb and brush cleaner was first marketed. Plaintiff stated in the pretrial order that it began to market "Ship-Shape" comb and brush cleaner "in or about 1949." (Pretrial order, p. 4, item 3(b) iii)

4. Their non-functional aspects, such as packaging, are dissimilar;

5. Their respective channels of trade are, for the most part, distinct.

26. There has been no evidence to suggest that the use of the term "SHIP SHAPE" by defendant has diluted plaintiff's use of the mark "Ship-Shape." Nor is there any likelihood of such an occurrence in the future.

27. There has been no evidence to suggest that the use by defendant of the term "SHIP SHAPE" has stained or tarnished the commercial reputation or standing of plaintiff and there is no evidence of any possibility that it may do so in the future. There has been no evidence to suggest that defendant's product is not commercially respected among the purchasing public.

## DISCUSSION

### I. TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

The plaintiff's right to relief under the Lanham Act, 15 U.S.C. § 1114(1), must be predicated upon a determination that defendant's use of the identical mark, "SHIP SHAPE," is "likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods."

■ In this respect it is not necessary to show actual instances of confusion or deception in order to establish trademark infringement or unfair competition. Mastercrafters Clock and Radio Company v. Vacheron & Constantin–Le Coultre Watches, Inc. 221 F.2d 464, 466 (2nd Cir. 1955), cert. denied 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743. "Confusion as to the source of origin is, of course, the keystone of an action based upon infringement of a registered mark." Avon Shoe Co., Inc. v. David Crystal, Inc. et al., 279 F.2d 607 (2nd Cir. 1960).

It is not sufficient for plaintiff to demonstrate the existence of the likelihood of confusion among a random sample of the public at large; rather, the case law mandates that confusion among the purchasing public is the relevant standard. Our circuit has recognized that the careless or inattentive purchaser cannot be disregarded in analyzing the prospect of confusion, although the primary emphasis of protection is not directed to the heedless consumer. Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 761 (1960). "Ordinary carelessness does not sanction extraordinary blindness," 3 Callman, Unfair Competition, Trademarks and Monopolies, § 81.2, at p. 582.

This court recognizes that the purchaser of common and inexpensive goods relies largely upon his memory, is casual and, at times, unsuspecting.

There is no touchstone or dogmatic principle which can be applied in evaluating the presence of "likelihood of confusion." It is the general overall impression which is dispositive in determining infringement; whether side-by-side comparisons of symbols, cartons and names would enable an attentive observer to differentiate them is not the test to be applied. Harold F. Ritchie, Inc. v. Chesebrough-Pond's Inc., supra at p. 762. Nevertheless, a rational analysis requires the comparison of various factors which courts have utilized. For purposes of discussion, they must be fragmented; of course, "confusion" does not appear in this vacuous context.

■ These variables include many extrinsic facts such as (1) the intent of the defendant to "palm-off" his goods as the plaintiff's; (2) the type of goods involved; (3) the classes of prospective purchasers, e.g., wholesale or retail; (4) the competitive relationship of the parties and their goods; (5) the extent of the public's awareness of the plaintiff's trademark, etc. Avon Shoe Company, Inc. v. David Crystal, Inc., supra, 279 F.2d at p. 607; Teleflex Inc. v. Telerad Mfg. Corp., 127 U.S.P.Q. 357 (S.D.N.Y. 1960); Restatement of Torts, § 729.

■ This court is also cognizant of the fact that the words "Ship Shape" are in the public domain. There is no

"per se" doctrine which entitles the first user of a specific name to prevent subsequent users from equal enjoyment; the question is ultimately, what injury will be sustained by the prior user due to the use of the mark by a subsequent user? Federal Telephone and Radio Corp. v. Federal Television Corp., 180 F.2d 250 (1950).

█ In the instant action it is not claimed that there was any intent on the part of defendant in adopting the use of the term "SHIP SHAPE" to "poach upon" the success of plaintiff and there is no evidence in the trial record to support such a statement. (Finding of Fact 24) A finding that there was no intent to pass-off defendant's services as those of plaintiff's strengthens the finding of the absence of likelihood of confusion. Sears, Roebuck and Company v. Allstate Driving School, Inc., 301 F. Supp. 4, 14 (E.D.N.Y. 1969); Jean Patou, Inc., v. Jacqueline Cochran, Inc., 312 F.2d 125 (2nd Cir. 1963).

█ A salient factor which negates the likelihood of confusion in this case is the fact that the respective products are functionally unrelated. (Cf. Findings of Fact 18 and 22) Defendant's "SHIP SHAPE" trademark is directed to a hair spray for men. Plaintiff's mark designates a chemical detergent for use on inanimate objects, namely, combs, brushes, fabrics, etc. The products, then, are intended for different purposes and applied differently; plaintiff's product requires preparation before use—it is a powder; defendant's product is an aerosol spray, applied directly to the scalp. (Cf. Findings of Fact 18 and 22)

█ Admittedly, the protection which the law affords to a mark holder is not confined to goods which have strict functional interchangeability because the zone of protection may reach into the area of non-competing goods. Baker v. Simmons Company, 307 F.2d 458, 462 (1st Cir. 1962). Protection extends to products which may be reasonably thought to originate from the same source.

Nevertheless, plaintiff has failed to establish facts which would show that the goods are commercially related in such a manner as to confuse the public. True, comb and brush cleaners and hair sprays are related to hair grooming; common sense dictates, however, that the similarities end there.

An examination of the packaging involved further substantiates the absence of likelihood of confusion. (Cf. Findings of Fact 19 and 21) The names of these two products should be considered in conjunction with other non-functional aspects. Harold F. Ritchie Inc. v. Chesebrough-Pond's, Inc., supra, 281 F.2d at p. 760.

The packaging of these goods is readily distinguishable. Plaintiff's 4 ounce and 12 ounce packages, sold at retail level, are paper boxes, frequently used as containers for soap granules. These packages are white and blue in color; the appellation is spelled "Ship-Shape" rather than "SHIP SHAPE," the latter form being used by defendant. The words "comb and brush cleaner" are prominently displayed on the front panel, accompanied by the phrase "soaks out dirt." (Exs. 8 and 9)

The Shulton product, on the other hand, is a cylindrical aerosol can, painted entirely red; its cap is white. As stated, the trademark is printed in solid capital letters, in gold. Of great significance is the fact that the defendant's product also displays two familiar trademarks in juxtaposition to the words "SHIP SHAPE." These are a drawing of the sailing vessel, "Grand Turk," and the trademark "Old Spice" written in script. These additional two marks are conspicuous, unique and well known. Defendant's use of the mark, "SHIP SHAPE," then, is not in a vacuum but, rather, in a context. The association of the name "SHIP SHAPE" with these two familiar marks further reduces the possibility of confusion; the purchaser is very likely to perceive the three trademarks as a unit rather than as three separate symbols. This phenomenon is

referred to in psychology as "Gestalt perception."

▮ Plaintiff points to the fact that there are very few registrations which use the term "Ship Shape" so that the possibility of confusion is logically greater than if there were a multitude of products using this designation. While Triumph Hosiery Mills, Inc. v. Triumph International Corp. et al., 308 F.2d 196 (2nd Cir. 1962) holds that a greater number of marks registered under the same name can negate the likelihood of confusion, it does not hold that the paucity of registrations using the same name requires, necessarily, a finding of likelihood of confusion.

There is no evidence of competition between the respective products herein involved due to their functional disparity. It is worthy to note that plaintiff, by its own business policy, has differentiated the names applied to its detergent products from its toilet articles. (Finding of Fact 8) Its detergent lines have been sold under the name "Ship Shape," whereas its hair ointments have different appellations: "Stax" for a hair dressing and conditioner (Ex. 29); "Dandricide" for an anti-dandruff rinse (Ex. P); "Dy-Zoff" for a hair color stain remover (Ex. 22). Thus, over the years, plaintiff has not sought to expand the use of the term "Ship Shape" into the toiletry field. Cf. Food Fair Stores Inc. v. Square Deal, 93 U.S.App.D.C. 7, 206 F.2d 482 (1953).

With respect to the channels of trade employed by the parties to market their wares, plaintiff argues that they are marketed at similar outlets so that confusion is likely. To the extent that plaintiff's product is sold to chicken farmer supply houses, in three hundred pound drums, there can be no debate.

With respect to the consumer size packages of the comb and brush cleaner, there was testimony that they are sold in outlets common to defendant's product, i.e., drug and department stores. (See Findings of Fact 18 and 20) Nevertheless, where goods are sold in retail establishments known for dealing in "an almost unlimited variety of articles in distinct and substantially unrelated lines of trade, the argument for similarity may be somewhat less persuasive." 3 Callman, supra at p. 821.

It should be noted for the record that both sides offered testimony of isolated instances of informal surveys that were taken in local drug stores to ascertain whether plaintiff's product was merchandised with toiletries rather than with cleaners. Suffice it to state that this court has considered the evidence for its limited value; since the methodology of sampling, questioning, and reporting was extremely informal, its probative worth is miniscule. Even assuming that plaintiff's product is usually marketed on a shelf next to defendant's, this would not, in itself, require a finding of likelihood of confusion.

▮ Plaintiff's unfair competition claim must also be dismissed; the gist of an action for common-law unfair competition is likelihood of confusion also. (See Finding of Fact 25) Avon Shoe Company, supra, 279 F.2d at p. 614.

## II. DILUTION

▮ Plaintiff also places reliance upon the dilution doctrine. The gravamen of a dilution complaint is that the continuing use of a mark similar to plaintiff's will inexorably have an adverse effect upon the value of plaintiff's mark and that, if plaintiff is not protected, its mark will eventually be deprived of its distinctiveness.

"* * * This injury differs materially from that arising out of the orthodox confusion; * * *. Such confusion leads to immediate injury, while dilution is an infection which, if allowed to spread, will inevitably destroy the advertising value of the mark." Polaroid Corp. v. Polaraid Inc., 319 F.2d 830, 836 (7th Cir. 1963).

Section 368–d of the New York General Business Law, McKinney's Consol. Laws, c. 20, entitled, "Injury to business

reputation; dilution," is the applicable statute on this issue.

While that section is designed to protect the good-will built up in a trademark from dilution by another, the doctrine has been used sparingly. To quote Mr. Justice Thomas A. Aurelio in Cue Publishing Company v. Colgate-Palmolive Company, 45 Misc.2d 161, 256 N.Y. S.2d 239, aff'd 23 A.D.2d 829, 259 N. Y.S.2d 377 (1965):

> "It would appear therefore, and the cases have so held, that to give effect to the dilution doctrine some measure of confusion must be present, and in those cases where it was found to exist the rights of the senior user were upheld. [Citations omitted]"

See also Geisel v. Poynter Products, Inc., 295 F.Supp. 331 (S.D.N.Y. 1968).

■ Thus, the decisions of the New York courts in cases involving the antidilution statute have depended upon some confusion, fraud, deception or "palming-off" where injunctive relief has been awarded. Plaintiff has not demonstrated any of these elements here.

This court is also satisfied that the commerical status and reputation and stature of defendant-corporation is such that the "likelihood of injury to business reputation" is non-existent; rather, the quality and reliability of defendant's produce evidences a high esteem among the purchasing public. Plaintiff has not offered any evidence to the contrary.

Therefore, the court makes the following Conclusions of Law:

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter of this action and over the parties. 15 U.S.C. §§ 1114 and 1121, and 28 U.S.C. §§ 1338(a) and 1338(b).

2. Defendant's use of the trademark "SHIP SHAPE" for a hair spray for men is clearly different from plaintiff's use of the trademark "Ship-Shape" for a comb and brush cleaner. Defendant's hair spray for men is a toilet preparation for use on a human head, whereas plaintiff's powdered detergent is for cleaning inanimate objects, combs and brushes, as well as paint brushes and other items, and is not applied to the human body.

3. Defendant's use of the trademark "SHIP SHAPE" for a hair spray for men has not caused confusion between defendant's hair spray and plaintiff's detergent for cleaning brushes and combs bearing the trademark "Ship-Shape," nor is such use likely to cause confusion as to the source or origin of such goods, or as to the respective source or origin of plaintiff's and defendant's products.

4. Defendant has not infringed any trademark rights of plaintiff by use of its mark "SHIP SHAPE" upon its hair spray product.

5. Defendant has not competed, and does not compete, unfairly with plaintiff in the sale of its men's hair spray bearing the trademark "SHIP SHAPE."

6. Defendant's use of the trademark "SHIP SHAPE" on a men's hair spray product and the manner in which defendant conducts its business do not constitute any threat to plaintiff's reputation or good will. Plaintiff is not entitled to injunctive relief.

7. The complaint is hereby dismissed on the merits. Judgment shall be entered declaring that defendant's trademark "SHIP SHAPE," as applied to a hair spray for men, does not infringe any of plaintiff's trademark rights, and directing the Commissioner of Patents, pursuant to 15 U.S.C. § 1119, to terminate the stipulation which enabled plaintiff to institute an opposition against defendant's trademark "SHIP SHAPE."

8. Defendant's application for United States trademark registration "SHIP SHAPE" for a hair spray men is for a trademark not confus similar to plaintiff's trademark Shape" for cleaning combs and and the defendant's said applie a United States trademark r

should be registered. The Commissioner of Patents is herewith directed to register such trademark.

9. Costs and disbursements are hereby awarded to defendant. Defendant's request for attorney fees is refused because evidence tending to prove that plaintiff intentionally deceived the court by the introduction of a photograph, which defendant claims to be fabricated, is insufficient.

Settle judgment on notice.