KING RESEARCH, INC., Plaintiff-Appellant,

v.

SHULTON, INC., Defendant-Appellee.
No. 274, Docket 71–1544.

United States Court of Appeals,
Second Circuit.
Argued Nov. 10, 1971.
Decided Jan. 7, 1972.

W. Hubert Plummer, New York City (Rogers, Hoge & Hills, Arthur L. Nathanson, New York City, on the brief), for plaintiff-appellant.

Leo C. Krazinski, Suffern, N. Y. (John K. Bangs, Clifton, N. J., on the brief), for defendant-appellee.

Before FRIENDLY, Chief Judge, FEINBERG, Circuit Judge, and DAVIS, Judge.*

FEINBERG, Circuit Judge:

Under what circumstances the owner of a trademark can protect it against use on products other than those to which he has applied the mark is a familiar problem in this court. But, as we noted in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961), the question "does not become easier of solution with the years." This case is no exception. Plaintiff King Research, Inc. sells a comb and brush cleaner under its trademark SHIP-SHAPE, and relying on the Lanham Act, 15 U.S.C. § 1051 et seq., claims that defendant Shulton, Inc. has infringed by using SHIP SHAPE as a mark on a hair spray for men. The United States District Court for the Southern District of New York, Richard

---

* Of the United States Court of Claims, sitting by designation.

H. Levet, J., found no infringement, in an opinion reported at 324 F.Supp. 631 (1971).[1] Although the case is a close one, we agree with Judge Levet.

Plaintiff manufactures a comb and brush cleaner, which it has sold under its mark SHIP-SHAPE since about 1949.[2] The product is apparently distributed primarily in large packages to beauty parlors and barber shops for their own use or for resale to customers, although the item is also marketed in smaller packages to drug wholesalers for drug stores and to rack jobbers for supermarkets and variety stores. For the years 1968 and 1969, plaintiff's sales of SHIP-SHAPE comb and brush cleaner were $140,000 and $150,000, respectively. Plaintiff does sell some toiletry products, but all have been marketed under marks other than SHIP-SHAPE: STAX for a hair dressing and conditioner; DANDRICIDE for an anti-dandruff rinse; DY-ZOFF for a hair color stain remover; and LOVE & KISSES for a hand cream.

Defendant Shulton, Inc. manufactures and distributes well-known lines of men's toilet articles. For over 30 years, it has used the trademark OLD SPICE and other marks, consisting of sailing ships under various names, on several cosmetics and grooming aids for men.

It first marketed SHIP SHAPE hair spray for men on a national basis in 1967. For the years 1968 and 1969, defendant's gross sales of the product were $338,000 and $362,000, respectively. Prior to using the mark SHIP SHAPE, defendant conducted a search that turned up two of plaintiff's registrations.[3] But, as the district court found, 324 F. Supp. at 634, "defendant considered the goods in plaintiff's two registrations to be entirely different from defendant's proposed hair spray for men." Not unexpectedly, plaintiff disagreed and in June 1967 commenced this action. A month later, plaintiff moved for a preliminary injunction. Judge Harold R. Tyler, Jr., denied the motion, holding that "there is no substantial likelihood of public confusion between the soap or detergent marketed by plaintiff for . . . cleaning brushes and combs" and defendant's hair spray.[4] After a non-jury trial on the merits over three years later, Judge Levet reached basically the same conclusion. 324 F.Supp. at 636-638.

Prior to 1961, this area of the law had been in a state of considerable flux, at least in this circuit, and our decisions were something less than wonderfully consistent both in their approach and in the results reached.[5] Finally, in *Pola-*

1. Plaintiff also unsuccessfully claimed dilution of its mark, see N.Y. General Business Law § 368–d (McKinney's Consol. Laws, c. 20, 1968), and unfair competition. These claims are not pressed on appeal.

2. Plaintiff has three registrations of the mark. The earliest, No. 433,967 (in a "fanciful rope design"), is not involved in this litigation. The remaining two, Nos. 607,415 and 723,978, differ with respect to the presence of a hyphen between the two words SHIP SHAPE. Defendant does not use a hyphen at all. But the parties have stipulated that neither will contend "that the appearance or nonappearance" of the hyphen will have any effect on their rights.

3. The relevant registration found, No. 607,415 states that it covers:

Hand dishwashing compound, machine dishwashing compound, comb and brush cleaner, egg cleaner used in hand cleaning of eggs and also used for machine cleaning of eggs, and hatchery tray machine cleaning compound, in class 52.

The registration not uncovered by defendant, No. 723,978, is substantially similar.

4. Unreported memorandum, August 1, 1967, p. 4.

5. Compare Admiral Corp. v. Penco, Inc., 203 F.2d 517 (2d Cir. 1953) (Admiral electric ranges and refrigerators protected against Admiral sewing machines and vacuum cleaners), and Standard Brands, Inc. v. Smidler, 151 F.2d 34 (2d Cir. 1945) (V–8 vegetable juice protected against V–8 vitamin tablets), with Federal Telephone & Radio Corp. v. Federal Television Corp., 180 F.2d 250 (2d Cir. 1950) (Federal radio repairs and other electronic equipment not protected against Federal television receivers and boosters),

*roid Corp., supra*, 287 F.2d at 495, Judge Friendly made an extensive listing of criteria useful in assessing a prior owner's claim that a non-competitor's use of a mark constitutes an infringement:

> [T]he prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account. American Law Institute, Restatement of Torts, §§ 729, 730, 731.

The decision in *Polaroid* went off on plaintiff's laches but the quoted list of relevant considerations was specifically approved in Triumph Hosiery Mills, Inc. v. Triumph International Corp., 308 F. 2d 196, 198 (2d Cir. 1962) ("Triumph" women's stockings not protected against "Distinction by Triumph of Europe" women's foundation garments). In Chandon Champagne Corp. v. San Marino Wine Corp., 335 F.2d 531, 536 (2d Cir. 1964) ("Dom Pérignon" imported champagne not protected against "Pierre Perignon" domestic champagne), we considered additional factors including "the serious harm an injunction would cause the defendant as against the trifling benefit to the plaintiffs." We used the same "method of approach" in Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., 411 F.2d 1097 (2d Cir. 1969), cert. dismissed, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970) ("Kiki" women's undergarments protected against "Kiki" tights, swimwear and sportswear).

Applying these rough criteria here, we find that plaintiff is not entitled to relief. The strength of the mark SHIP-SHAPE is only moderate. Although there is a high degree of similarity between the two marks standing alone, the packaging techniques used in the two products are sharply different. Plaintiff's product, like a detergent, is sold in a large box; defendant's hair spray, like shaving cream, is packaged in a cylindrical aerosol can. See 324 F. Supp. at 637. As to "proximity," plaintiff would get a middling to high rating if its product were designed and marketed solely as a comb and brush cleaner. But the product is more than that. On the four-ounce carton, plaintiff emphasizes that SHIP-SHAPE "Cleans paint brushes, too!" [6] On its two-pound box, plaintiff asserts that SHIP-SHAPE "Safely cleans 'like new' Brushes-Combs, Paint Brushes, Plastic Aprons & Capes, Chrome Furniture, Plastic Upholstery [and] Venetian Blinds." Plaintiff rates low on the likelihood that it will some day bridge the gap and sell hair spray for men under the mark SHIP-SHAPE, in view of the fact that its own sales of toiletry articles to date have been under other names. Cf. *Kiki Undies, supra*, 411 F.2d at 1100. Similarly, plaintiff made no real showing of actual confusion, see 324 F.Supp. at 638, although in light of the relative unsophistication of the buyers (particularly the retail customers), the possibility of confusion would remain if the products were sold in similar packages. The question of defendant's bad faith in adopting the contested mark is close. To be sure, defendant went ahead with its plans to market men's hair spray under the mark, knowing it to be identical to one used by plaintiff. But the reference to "comb and brush cleaner" in plaintiff's registration, sandwiched in between

---

and S. C. Johnson & Son v. Johnson, 175 F.2d 176 (2d Cir.), cert. denied, 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949) (Johnson's wax granted only limited protection against "Johnson's Household Cleaner").

6. A similar assertion, with appropriate instructions for use, appears on the 12-ounce box.

"dishwashing compound" and "egg cleaner," hardly conjures up images of personal grooming. Moreover, in view of defendant's extensive use of various ship trademarks in the past, its choice of SHIP SHAPE was not illogical, cf. *Chandon Champagne Corp., supra,* 335 F.2d at 536, nor is there persuasive evidence that defendant, well-known in its own field, attempted to "pass-off" its product as plaintiff's, see *Triumph Hosiery Mills, Inc., supra,* 308 F.2d at 199. Accordingly, plaintiff gets only a fair rating in this category. In addition, there is no indication that the quality of defendant's product is such that it may hurt the reputation of plaintiff's mark. Finally, on the record presented, plaintiff rates low on the question of the benefits it would obtain from the granting of injunctive relief as against the possible harm such relief would cause defendant, which has invested substantially in promoting the mark on its hair spray.

Admittedly, these conclusions are imprecise, as all such rough judgments must be. Having made them, we must confess that we are not overwhelmed by the sudden blinding light of the justness of one party's cause. But putting these impressions all together, we are unable to say that the experienced trial judge was wrong in refusing plaintiff relief. We do wish to make clear, however, that our ruling is based upon the present dress and marketing techniques of defendant's hair spray. If defendant's product were to be marketed in packages creating a greater danger of confusion, plaintiff might be able to succeed in another action. See *Chandon Champagne Corp., supra,* 335 F.2d at 535.

Plaintiff also argues that the district court committed reversible error in sustaining an objection to a question put to one of defendant's officers in cross-examination. The argument is without merit.

Judgment affirmed.