**McGREGOR–DONIGER, INC., Plaintiff,**

v.

**DRIZZLE, INC., Defendant.**

No. 75 Civ. 1151.

United States District Court, S. D. New York.

Feb. 27, 1978.

"DRIZZLE" in connection with its outerwear constitutes trademark infringement, false designation of origin and common law unfair competition. Accordingly, McGregor sues under 15 U.S.C. §§ 1114(1) and 1125(a), as well as under the "common law" (see Count III, Complaint). Jurisdiction is based on 15 U.S.C. § 1121, 28 U.S.C. § 1338(a) and (b) and, presumably, on the doctrine of pendent jurisdiction.

The central issue posed is whether McGregor is entitled to protection of its trademark against use on products other than golf jackets, which are the only products for which McGregor obtained the "DRIZZLER" registration.[1]

█ The standards for resolving such an issue were set forth in *Polaroid Corporation v. Polarad Electronics Corporation*, 287 F.2d 492, 495 (2d Cir.) *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961):

> "Where the products are different, the prior owner's chance of success is a function of many variables: the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers. Even this extensive catalogue does not exhaust the possibilities—the court may have to take still other variables into account. American Law Institute, Restatement of Torts, §§ 729, 730, 731."

*Accord, Scarves By Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir. 1976); *King Research, Inc. v. Shulton, Inc.*, 454 F.2d 66, 68 (2d Cir. 1972); *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1099 (2d Cir. 1969), *cert. denied*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970); *Triumph Hosiery Mills, Inc. v. Triumph International Corporation*, 308 F.2d

Shenier & O'Connor, New York City, for plaintiff; Henry L. Shenier, William A. Kinnaman, Jr., New York City, of counsel.

Robert W. Fiddler, New York City, for defendant.

LASKER, District Judge.

McGregor-Doniger, Inc. ("McGregor") is a manufacturer of sportswear and the owner of the trademark "DRIZZLER." Since 1947, it has sold golf jackets under that mark, and in March, 1965, it obtained registration of "DRIZZLER" for use in connection with its golf jackets (Plaintiff's Exhibits, "PX," 117, 117A). Drizzle, Inc. ("Drizzle"), incorporated in 1969, manufactures and sells women's overcoats, including raincoats. Its products are sold under the trademark "DRIZZLE."

McGregor alleges that in light of its own use of the mark "DRIZZLER" in connection with golf jackets, defendant's use of

---

1. Among the issues raised by Drizzle's defense are the contentions that "DRIZZLER" is not registrable because it is merely descriptive and that registration of "DRIZZLER" was procured through fraud. In light of our disposition of plaintiff's claims, there is no need to discuss these contentions.

196, 198 (2d Cir. 1962). Application of the *Polaroid* test to the facts of this case establishes that McGregor has failed to demonstrate actionable trademark violation, false designation, or unfair competition.

*Strength of Mark*

■ It is difficult to locate a precise, analytical definition of "strength" as that term is used in connection with trademarks.

"In essence, the distinctiveness and popularity of the trademark will determine its relative strength or weakness and will, accordingly, define the scope of protection to be accorded the mark against the confusing similarity of others. A mark is strong if it is conspicuously distinctive; it is distinctive if the public has already been educated to accept it as the hallmark of a particular source. Then, too, a mark can be distinctive either because it is unique, that is, distinctive in itself, because it has been the subject of wide and intensive advertisement, or because of a combination of both." 3 Callmann, Unfair Competition, Trademarks and Monopolies, § 82.1(1) at 755–56 (3d ed. 1969) (footnotes omitted).

As is apparent from the quoted passage, strength may derive from the intrinsic quality of a mark or from its public history. However the quality develops, the characteristic of the strong mark is that it identifies the source of origin of the product. *W. E. Bassett Company v. Revlon, Inc.*, 435 F.2d 656, 661 (2d Cir. 1970) (*"Bassett II"*); *W. E. Bassett Company v. Revlon, Inc.*, 354 F.2d 868, 871 (2d Cir. 1966) (*"Bassett I"*).

■ Turning to the concept of "intrinsic strength," it is not clear precisely what sort of quality is denoted by "strength." Court pronouncements on this point are often conclusory and terse and not always illuminating. *See, e. g., King Research, Inc. v. Shulton, Inc., supra,* 454 F.2d at 68 (on the issue of strength, the court remarked only that "[t]he strength of the mark . . . is only moderate"); *Polaroid Corporation v. Polarad Electronics Corporation, supra,* 287 F.2d at 495 ("Here plaintiff's mark is a strong one . . ."). Nevertheless, it appears that the distinction between "strong" and "weak" may be analogized to the distinction between "descriptive" and "arbitrary and fanciful." This relation between the two sets of terms is implicit in courts' conclusions that descriptive terms and proper names are intrinsically weak,[2] while arbitrary and fanciful words/phrases are strong.[3] It simplifies matters if the overcrowded adjectival population of trademark law is thinned out, *Abercrombie & Fitch v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976), and in light of the long judicial history of associating "weak/strong" with "descriptive/fanciful," we will measure plaintiff's mark by the second, more readily understood standard.

In this case, although we do not find that the "DRIZZLER" mark is descriptive, we do find that it inhabits that part of the spectrum running from "merely descriptive" to "suggestive" (*see, Abercrombie & Fitch v. Hunting World, Inc., supra,* 537 F.2d at 9), rather than the sector bounded by "fanciful and arbitrary." The finding that "DRIZZLER" lives in the descriptive/suggestive zone is based on the following definition:

"A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys

2. See *Bassett II, supra,* 435 F.2d at 661; *Bassett I, supra,* 354 F.2d at 871; *Chandon Champagne Corporation v. San Marino Wine Corporation*, 335 F.2d 531, 536 (2d Cir. 1964); *Arrow Distilleries v. Globe Brewing Co.*, 117 F.2d 347 (4th Cir. 1941); *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London*, 378 F.Supp. 403, 410 (S.D.N.Y.1974); *Syntex Laboratories, Inc. v. Norwich Pharmacal Company*, 315 F.Supp. 45, 51 (S.D.N.Y.1970); *Sears, Roebuck and Co. v. Allstate Driving School, Inc.*, 301 F.Supp. 4, 11 (S.D.N.Y.1969); *Proxite Products,*

*Inc. v. Bonnie Brite Products Corp.*, 206 F.Supp. 511, 515 (S.D.N.Y.1962); *and see, Scarves By Vera, Inc. v. Todo Imports Ltd. (Inc.), supra,* 544 F.2d at 1173.

3. See, *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., supra,* 411 F.2d at 1097; *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc.*, 393 F.Supp. 502, 512 (E.D.N.Y.1975); *Chester Barrie, Ltd. v. Chester Laurie, Ltd.*, 189 F.Supp. 98, 102 (S.D.N.Y.1960).

an immediate idea of the ingredients, qualities or characteristics of the goods." *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968) (footnote omitted). The mind surely does not jump instinctively from contemplation of the term "DRIZZLER" to knowledge of the qualities of a jacket.[4] That is, DRIZZLER seems suggestive as applied to jackets. We need not decide whether "DRIZZLER" is descriptive (this result might be indicated by the above cited decisions of the Court of Appeals for the Second Circuit, *supra* at n. 4) or suggestive (as measured by the definition in *Stix*, quoted above) since it is either descriptive or suggestive, but not arbitrary or fanciful.

█ This determination does not end the matter, however, because a descriptive or suggestive mark (one lacking inherent strength) may "evolve" to a stage where it deserves protection from use by non-competitors. Such a transformation requires that the mark acquire a secondary meaning. *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London, supra*, 378 F.Supp. at 410; see, *Scarves By Vera, Inc. v. Todo Imports Ltd. (Inc.), supra*, 544 F.2d at 1173. That is, it must be shown that the primary significance of the term in the minds of the consuming public is not the product but the producer. *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938); *Bassett II, supra*, 435 F.2d at 661; *Ralston Purina Company v. Thomas J. Lipton, Inc.*, 341 F.Supp. 129, 133 (S.D.N.Y. 1972). In the instant case, McGregor has not established that "DRIZZLER" has acquired a secondary meaning. The only evidence offered on the issue are the figures as to the volume of sales of DRIZZLER jackets from 1964 through 1975 (approximately $37 million (PX 108B)) and the amount spent on advertisement of the product during that period ($650,000 (PX 108C)). Nothing on the record indicates whether these sums did, as a matter of fact, create public renown, and as a matter of law, proof of sales and advertising expenses are alone insufficient to show secondary meaning.[5] In sum, plaintiff has not established by a preponderance of evidence that "DRIZZLER" has transcended its suggestive descriptive nature by acquiring a secondary meaning.[6]

## Similarity of the Marks

The typewritten and aural similarity between "DRIZZLER" and "DRIZZLE" needs no comment; it approaches identity. However, it must be noted that "[t]he Drizzler mark . . . is always used in combination with McGregor." (Testimony of David Aaron, salesman for McGregor for 35 years, Tr. at 58). That is, the label used in the "DRIZZLER" jacket prominently features the McGregor logo (which consists of the word McGregor printed in striking, Scotch plaid capital letters), so that the two words "DRIZZLER" and "McGREGOR" are naturally read together (PX 115A, 115B). Furthermore, the print and television advertisements also emphasize the McGregor name (PX 7, 12, 19A, 19D, 41, 43A, 43C, 47, 53, 70, 75). In light of this conjunction, defendant's use of the single word "DRIZZLE" mark, either on its label—which is, visually, strikingly different from McGregor's (*see,*

4. On the other hand, perhaps others might experience such an unmediated association, in light of the fact that "trim" has been held to be descriptive as applied to manicuring implements, *Bassett I, supra*, 354 F.2d at 871, and "flexitized," a foreigner to the language, has been held descriptive of collars. *Flexitized, Inc. v. National Flexitized Corporation*, 335 F.2d 774, 780 (2d Cir. 1964), *cert. denied*, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965).

5. *Norwich Pharmacal Co. v. Sterling Drug, Inc.*, 271 F.2d 569, 572 (2d Cir. 1959), *cert. denied*, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960); *Roux Laboratories, Inc. v. Clairol Incorporated*, 427 F.2d 823, 829 (CCPA 1970); *Exquisite Form Industries, Inc. v. Exquisite Fabrics of London, supra*, 378 F.Supp. at 411; *Ralston Purina Company v. Thomas J. Lipton, Inc., supra*, 341 F.Supp. at 134; *Remco Industries, Inc. v. Toyomenka, Inc.*, 286 F.Supp. 948, 953 (S.D.N.Y.), *aff'd*, 397 F.2d 977 (2d Cir. 1968).

6. In light of the finding that the mark is descriptive/suggestive and not associated with a source of origin, there is no need to pass on defendant's contention that the mark's tendency to identify a single source of origin has been diluted by third party use.

PX 106B, 106C)—or in its print advertising (PX 107A, B, C, E, G, H, I, L, N, O, R, S, U, W), reduces the similarity that is shared by the two marks when they are compared out of context. *See, King Research, Inc. v. Shulton, Inc., supra,* 454 F.2d at 68.

### Competitive Proximity of the Products/Quality of Defendant's Product

Beyond the fact that they might both be crudely classified as outerwear, the "DRIZZLER" and defendant's products have nothing in common. McGregor's garment is a relatively inexpensive,[7] lightweight, waistlength jacket—a windbreaker (*see* PX 1, 11D). As is apparent from advertisements for the jacket, it is intended for casual wear, particularly in connection with sports activities. Moreover, although the DRIZZLER can be worn by either men or women, sales are pitched primarily to the former and almost all of McGregor's advertisements feature male models. Furthermore, a DRIZZLER is ordinarily sold in the men's department of stores which carry both men's and women's garments (testimony of Sidney Hutt, secretary and comptroller of McGregor, Tr. at 19, 20; Aaron, Tr. at 52, 56).

Unlike McGregor's products, the coats manufactured by Drizzle are distinctly and exclusively tailored for women. They are generally full length raincoats and capes. Although it is true that Drizzle manufactures a style that might be called a jacket (*see*, PX 107L), it is longer than the DRIZZLER and entirely different in appearance. Drizzle's garments are within the medium to high fashion range (*see*, Defendant's Exhibit, "DX" S and plaintiff's exhibits of defendant's print advertising). The price range of Drizzle's line, running from approximately $100. to $900. (testimony of Jerry Small, secretary of Drizzle, Tr. at 124–27; testimony of George Kelly, chairman of J. W. Robinson Co., a Los Angeles department store comparable to Lord & Taylor, Tr. at 150), reflects the coats' position in the fashion hierarchy.

In sum, the "competitive" distance between plaintiff's and defendant's products is significant.

### Bridging the Gap

At trial, McGregor produced no evidence that it has any plans to enter the women's coat market,[8] that is, to manufacture coats similar to those currently marketed by DRIZZLE. Furthermore, there was no evidence that were McGregor to enter the women's coat market, it would do so under the DRIZZLER name, *King Research, Inc. v. Shulton, Inc., supra,* 454 F.2d at 68, for in the past, when McGregor did market a distinctively feminine line of clothing, it did so under distinct trademarks other than "DRIZZLER" (*see, e. g.,* PX 100A–100O the "BROLLY DOLLY" line).

### Actual Confusion/Sophistication of Buyers

McGregor offered no evidence of actual confusion. In fact, on the issue of confusion, the only evidence was that provided by the defendant. Both Kelly and Deborah Bond, a buyer at Lord & Taylor's, testified that in their respective opinions there was neither actual confusion nor a likelihood that a consumer would confuse plaintiff's and defendant's products (Kelly, Tr. at 154; Bond, Tr. at 139–40). These opinions are credible in light of the fact that the purchaser of Drizzle's products tends to be generally a sophisticated buyer, a style conscious woman, over 25, in the upper middle income bracket ($20,000. a year) (Bond, Tr. at 136; see also, Kelly, Tr. at 151).

### Bad Faith

Although McGregor alleges that Drizzle has acted in bad faith, there is no evidence that Drizzle ever intended "to obtain a free

---

7. In recent years, the standard model has sold for approximately $23. Although McGregor sells a higher priced—$50. (testimony of Helen Zuckerman, employed in the finance department of McGregor, Tr. at 37–9)—model of the DRIZZLER (it has a zip-out lining), most, if not all, of the advertising, features the standard, $23. model and most sales of the DRIZZLER are of the standard model (Aaron, Tr. at 50–4).

8. It appears that there has not been any effort to sell DRIZZLERS to women since 1968 (Hutt, Tr. at 19).

ride on the reputation of the owner [McGregor] of the trade-mark," *Triumph Hosiery Mills, Inc. v. Triumph International Corporation, supra,* 308 F.2d at 199; *King Research, Inc. v. Shulton, Inc., supra,* 454 F.2d at 69. To the contrary, as to the origin of defendant's trademark, for example, Small, who chose the name, testified that his daughter submitted a list of ten or twelve names, from which he and his partner selected "DRIZZLE," a not illogical choice for a company that sells, *inter alia,* women's raincoats.

\* \* \* \* \* \*

The above discussion establishes not only that McGregor has failed to show that Drizzle's use of the mark "DRIZZLE" constitutes trademark infringement in violation of 15 U.S.C. § 1114(1), but that there is no likelihood that consumers would confuse the sources of origin of plaintiff's and defendant's products (15 U.S.C. § 1125(a)). Accordingly, both the trademark infringement and false designation claims are dismissed. This, of course, compels dismissal of the state claim, since there is now no substantial federal claim to which it can remain as pendent.

This memorandum constitutes the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

The complaint is dismissed.

It is so ordered.