COMPUTER ASSOCIATES INTERNATIONAL, INC., Plaintiff and Counterclaim–Defendant,

v.

COMPUTER AUTOMATION, INC., Defendant and Counterclaim–Plaintiff.

No. 86 Civ. 8677 (KTD).

United States District Court, S.D. New York.

Oct. 14, 1987.

Davis Hoxie Faithfull & Hapgood, New York City, for plaintiff; Stephen D. Kahn, Charles J. Raubicheck, Brandon S. Sklar, New York City, of counsel.

Scully, Scott, Murphy & Presser, Garden City, N.Y., and Knobbe, Martens, Olson & Bear, Newport Beach, Cal., for defendant; Robert J. Eichelburg, Garden City, N.Y., and James B. Bear, Lowell Anderson, Newport Beach, Cal., of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Computer Associates International, Inc. ("Associates"), a Delaware corporation with its principal place of business in New York, develops and markets computer software products in the United States and abroad. Defendant, Computer Automation, Inc. ("Automation"), a Delaware corporation with its principal place of business in California, designs, manufactures, markets, and services computer-related products. This case involves the use of the letters "CA" in logos that represent both parties. Several motions are before the court: (1) Associates moves to amend its complaint; (2) Automation moves to dismiss several of Associate's claims, or in the alternative for a more definite statement of those claims; and (3) Automation moves to disqualify Associates' counsel except for certain limited matters. For the reasons set forth below, Associates' motion to amend its complaint is partially granted, Automation's motion to dismiss is granted in part, and Automation's motion to disqualify counsel is denied.

### FACTS

Automation applied to the Patent and Trademark Office for a trademark for the letters "CA" in a stylized "inchworm" logo.

While that trademark application was pending, Associates and Automation discovered that for several years they had both been using the letters "CA"; Automation had used "CA" in the "inchworm" logo as a trademark, and Associates had used "CA" in a block letter logo for advertising purposes, including as a prefix in trademarks used to identify its products. In order to clarify their positions regarding use of the term "CA" and the pending trademark application, Associates and Automation negotiated an agreement (the "Agreement"), effective October 1, 1982, by which both companies agreed to continue using the letters "CA" in connection with their products. The Agreement stated that there had never been confusion as to whether Associates or Automation was the source of a particular product or service and that both parties agreed no confusion was likely. The Agreement consisted of the following promises:

1. ASSOCIATES will not oppose the issuance of a [trademark] registration to AUTOMATION with respect to [its "CA" logo].

2. AUTOMATION will not seek to enforce any registration that may issue with respect [its "CA" logo] against ASSOCIATES.

3. AUTOMATION will not seek to prevent ASSOCIATES' use of the term "CA" including use of "CA" as a prefix in the name of the products or services of ASSOCIATES or use of "CA" for journalistic purposes; but in no event will such use of "CA" be in the inchworm form or in a confusingly similar form, and ASSOCIATES agrees not to use such forms.

4. ASSOCIATES will not seek to prevent AUTOMATION's use of the term "CA", but in no event will AUTOMATION use "CA" as a prefix in the name of the products or services of AUTOMATION, and AUTOMATION agrees not to use "CA" in that manner.

5. The terms and conditions of this Agreement shall inure to the benefit of the parties and to their subsidiaries, affiliates and parent corporations, wherever located.

Complaint, Exhibit E at p. 2. Pursuant to the Agreement, Associates did not oppose the issuance of a registration to Automation for its "CA" logo, and Automation obtained United States Trademark Registration Number 1,228,910 for "CA" in the "inchworm" logo (the "trademark"). Since the Agreement was entered into, Associates has obtained thirty federal trademark registrations for various marks of the form "CA–XXXXX" (e.g., CA–EARL, CA–UCANDU, CA–AUTOTAB).

This case was initiated because of the Agreement and three letters, written by defendant Automation to plaintiff Associates in September 1986, threatening to enforce Registration No. 1,228,910. On September 8, 1986, Automation's general counsel wrote to Associates' Vice President, stating in relevant part:

Computer Automation, Inc. and Computer Associates International, Inc. are parties to an agreement ... pursuant to which [Computer Associates] is permitted to use the term "CA" as a prefix in the name of its products or services. Enclosed ... is a copy of a recently discovered advertisement which appears to use "CA" in a manner not contemplated by the agreement.

By this letter, it is hereby requested that such use of the term "CA" be discontinued immediately.

Complaint, Exhibit A.

On September 10, 1986, Automation's independent counsel, James Bear ("Bear"), wrote to Associates' counsel, Stephen Kahn ("Kahn"), stating in relevant part:

Computer Automation recently corresponded with Computer Associates demanding that they not use the letters CA as a designation for the company in advertising.... We believe that this designation will confuse the public, and is beyond the scope of our agreement. Furthermore, I enclose a news release indicating that Computer Associates is amending their stock exchange designation from CASI to CA. This designation will confuse stock purchasers.

It was never the intention of the parties that either would use the designation in a manner which would confuse the public. Please advise your client to rectify this situation to avoid a clear likelihood of confusion.

Complaint, Exhibit C. A copy of this letter was also sent to Walter Lehman, the Liason Representative at the New York Stock Exchange.

Finally, on September 24, 1986, Bear again wrote to Kahn, stating in relevant part:

I wish to repeat our contention that use of the letters "CA" in the current advertising of Computer Associates and in Computer Associates['] stock identification will inevitably lead to confusion among customers or stock purchasers. In our view, such use could not possibly have been within the contemplation of the parties when they made their agreement, since such an agreement would have been against public policy....

I have been discussing the possibility of litigation with my client in order to resolve this matter. My client and I are hopeful that such a confrontation will not be necessary. However, your client's aggressive expansion of its use of the letters "CA" has created a very difficult situation for both your client and ours.

Complaint, Exhibit D.

On November 12, 1986, Associates brought this suit against Automation alleging five causes of action:

(1) Associates seeks a declaratory judgment that: United States Trademark Registration Number 1,228,910 is invalid for failure to comply with federal trademark law, and for abandonment of the trademark; that Automation has no common law trademark rights to the term "CA"; and that Associates has not infringed Automation's federal or common law rights to the trademark;

(2) Automation's letters to Associates dated September 8, 10, and 24, 1986 breached the Agreement;

(3) Automation's letters to Associates constitute federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (1982);

(4) Automation's letters to Associates constitute common law unfair competition under the law of the State of New York;

(5) Automation's letters to Associates constitute unfair competition, deceptive practices, and dilution under New York Gen.Bus.Law § 368–d (McKinney 1984).

Automation counterclaims for:

(1) breach of the Agreement;

(2) fraud, mistake, and deceit in the interpretation, force, and effect of the Agreement;

(3) federal trademark infringement;

(4) federal unfair competition;

(5) common law trademark infringement and unfair competition;

(6) dilution under New York State law; and

(7) in the alternative, a declaratory judgment holding that the Agreement is void as against public policy for allowing or encouraging a likelihood of confusion; if so, Associate's uses and federal trademark registrations of "CA" pursuant to the Agreement violate Automation's prior rights to that mark.

**DISCUSSION**

The parties have made several motions, which will be considered *seriatim.*

A. *Associates' Motion to Amend its Complaint*

Associates moves pursuant to Fed.R. Civ.P. 15(a) to amend its complaint: (1) to revise its unfair competition claims, Counts III and V, to identify the specific statutory violations alleged; and (2) to add a cause of action for a newly discovered breach of the Agreement, Count VI. Associates alleges that after the original complaint was filed, it discovered that Automation was marketing a computer program under the trademark "CARTOS". Associates alleges that Automation's program is a "real time operating system", likely to be abbreviated as "RTOS". Associates alleges that Automa-

tion intends the trademark "CARTOS" to mean the "CA RTOS" computer program, and thereby to breaches Paragraph 4 of the Agreement. Paragraph 4 of the Agreement provides that:

ASSOCIATES will not seek to prevent AUTOMATION's use of the term "CA", but in no event will AUTOMATION use "CA" as a prefix in the name of the products or services of AUTOMATION, and AUTOMATION agrees not to use "CA" in that matter.

Complaint, Exhibit E. Associates therefore seeks to amend its complaint by adding a cause of action that Automation has breached Paragraph 4 of the Agreement.

■ Leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "[I]f [Associates] has at least colorable grounds for relief, justice does so require unless [Associates] is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979). Automation does not allege that Associates is guilty of undue delay, acting in bad faith, or that it will be prejudiced by allowing the complaint to be amended. The amendments to Counts III and V merely clarify the original counts by adding the specific statutes allegedly violated. As pointed out below, these counts must be dismissed in either the original or amended version. The additional claimed breach of the Agreement, Count VI, arises out of the same subject matter as the original complaint. Therefore Automation has been on notice of its potential liability since the commencement of this action. Accordingly, Associates' motion to amend is granted and the Amended Complaint will serve as the basis for the analysis of Automation's motion to dismiss.

### B. *Automation's Motion to Dismiss Associate's Unfair Competition Claims*

Automation moves pursuant to Fed.R. Civ.P. 12(b)(6) to dismiss Counts III–V of the complaint for failure to state a claim on which relief can be granted. Alternatively, Automation moves pursuant to Fed.R.

Civ.P. 12(e) for a more definite statement of Count V, specifying the New York State statutory section allegedly violated by Automation's acts. Automation argues that Count V of the complaint is so vague and ambiguous that it cannot reasonably be required to frame a pleading responsive to it.

Counts III–V of the complaint may be dismissed under Rule 12(b)(6) if it appears "beyond doubt that [Associates] can prove no set of facts in support of [its] claim[s] which would entitle [it] to relief." *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed. 2d 80 (1957) (footnote omitted)). In ruling on such a motion, all factual allegations in the complaint must be presumed true, and all reasonable inferences must be made against the moving party.

■ Associates alleges the following facts in support of its unfair competition claims (Counts III–V):

that defendant Automation has no valid trademark rights in or to the term "CA" for the goods specified in U.S. Trademark Registration No. 1,228,410 [sic];

that the Agreement provides that Automation will not assert any trademark registration for the term "CA" against Associates;

that the Agreement permits Associates to use the term "CA" except in a particular form which Associates has never used;

that, despite these facts and its knowledge of them, Automation has alleged that it has trademark rights in the term "CA" and has threatened to sue Associates for its use of the term "CA" in advertisements; and

that, despite these facts and its knowledge of them, Automation has alleged that it has trademark rights in the term "CA" and has threatened to sue Associates for its use of the term "CA" as a stock trading symbol.

Plaintiff's Memorandum in Opposition to Defendant's Motions Under Fed.R.Civ.P. 12, 3–4 (footnote omitted). Even assuming that all of Associate's factual allegations

are true, these facts do not support Count III's claim for relief under the Lanham Act. That Act provides in pertinent part that:

> [a]ny person who shall ... use in connection with any goods or services ... any false designation or representation ... and shall cause such goods or services to enter into commerce ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a) (1982). Assuming that Automation has no valid trademark rights to the term "CA", and that its claim to those rights in letters to Associates constituted the "false designation or representation" required by the Lanham Act, Automation's three letters still do not provide a cause of action under that Act. The allegedly "false representation" neither was made in connection with goods or services that entered into commerce, nor achieved any unfairly competitive effect. These facts support a cause of action for breach of the Agreement, not federal unfair competition.

■ Likewise, these facts do not support Count IV's claim for relief under New York common law unfair competition. The essence of such a claim is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of goods. *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *King Research, Inc. v. Shulton, Inc.*, 324 F.Supp. 631, 638 (S.D.N.Y.1971), *aff'd*, 454 F.2d 66 (2d Cir.1972). The facts alleged by Associates and the letters sent by Automation do not support such a claim. The letters do not constitute either a bad faith misappropriation or give rise to the likelihood of confusion. Rather, they make out a cause of action for breach of the Agreement, not common law unfair competition.

Count V of Associates' Amended Complaint specifies the New York statutory section allegedly violated by that Count. As a result, Automation's motion for a more definite statement of Count V has been complied with and is therefore moot.

· ■ Finally, Associates' allegations do not support Count V's claim for relief under New York's anti-dilution statute. That statute provides that:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

New York Gen.Bus.Law § 368–d (McKinney 1984). "Though an antidilution claim may be established in the absence of likely confusion as to source, there must be a mark of sufficient distinction to warrant the statute's special protection and there must be a blurring or tarnishing of the plaintiff's mark sufficient to constitute dilution." *Warner Bros. v. American Broadcasting Companies*, 720 F.2d 231, 248 (2d Cir.1983). Associates' allegations contain no mention of the likelihood that its mark will be blurred, tarnished or diluted by Automation's letters. Again, Associates has made out a claim for breach of the Agreement, but not for violation of New York's anti-dilution statute.

C. *Automation's Motion to Disqualify Associates' Counsel*

Automation moves pursuant to Disciplinary Rule ("DR") 5–102(A) to disqualify the attorney and law firm representing Associates, Stephen Kahn and Davis, Hoxie, Faithfull & Hapgood ("Davis, Hoxie"), except for matters related to preparation of or participation in settlement discussions in this case. Automation bases its motion on the fact that Kahn negotiated and drafted the Agreement at issue on behalf of Associates, and the second and third of the three letters at issue were addressed to Kahn. Because of this involvement, Automation noticed Kahn's deposition and plans to call him as a witness at trial. Automation argues that disqualification of both Kahn and Davis, Hoxie is required by law.

The attorney who negotiated the Agreement and wrote the second and third letters on behalf of Automation, James Bear, is also of counsel in this litigation. If Kahn and Davis, Hoxie are disqualified from this case, Automation asserts that Bear and his firm, Knobbe, Martens, Olson & Bear ("Knobbe, Martens"), will withdraw from their of counsel position. Associates argues that DR 5–102(B) rather than DR 5–102(A) applies to the situation presented, and excepts Kahn and Davis, Hoxie from disqualification.

The Code of Professional Responsibility provides that:

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

[DR 5–101(B)(1)—(4) allow the lawyer or a lawyer in his firm to testify regarding:

(1) an uncontested matter;

(2) a matter of formality when there is no reason to believe that the testimony will be substantially opposed;

(3) the nature and value of legal services rendered to the client in the case;

(4) any matter, if refusal to testify would work a substantial hardship on the client because of the lawyer's distinctive value in the case.]

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

Code of Professional Responsibility DR 5–102 (McKinney 1975).

■ The parties disagree as to which disciplinary rule applies to this situation. DR 5–102(A) addresses the situation where an attorney "ought to be called as a witness on behalf of his client"; DR 5–102(B) concerns the situation where an attorney "may be called as a witness other than on behalf of his client." It seems clear that regardless of which party might call Kahn as a witness, any testimony he might give regarding the Agreement or its negotiation would be on behalf of his client, Associates. In addition, it is unclear, and nowhere addressed in Automation's papers, how Associates might be prejudiced if Automation were to call Kahn as a witness. Therefore DR 5–102(A) applies to the situation at bar, and the determinative standard on this issue is whether Kahn "ought to be called as a witness on behalf of his client."

[W]hether a witness "ought" to testify is not alone determined by the fact that he has relevant knowledge or was involved in the transaction at issue. Disqualification may be required only when it is likely that the testimony to be given by the witness is necessary. Testimony may be relevant and even highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence.

*S & S Hotel Ventures v. 777 S.H. Corp.*, 69 N.Y.2d 437, 445–46, 508 N.E.2d 647, 651, 515 N.Y.S.2d 735, 739 (1987) (citations omitted). Like the factual situation in *S & S Hotel Ventures*, Associates declares that Kahn's testimony is unnecessary to prove its case because other individuals controlled the negotiation and drafting of the Agreement, and that it does not intend to call Kahn as a witness at all.

Where [an informed commercial plaintiff], in such circumstances, knowingly chooses to forego the testimony of its lawyer because it prefers to continue the representation of its law firm, it is curious indeed for the adversary to insist that the lawyer ought to be called as a witness for that client, and for a court on that basis to disqualify the firm.

*S & S Hotel Ventures*, 69 N.Y.2d at 445, 508 N.E.2d at 651, 515 N.Y.S.2d at 739. In addition, by moving for disqualification of

Associates' counsel, Automation bears the burden of proving that the case being litigated would be tainted by Kahn's or Davis, Hoxie's participation. *Id.* Under the circumstances of this case, Automation has neither alleged nor established that any such taint or unfairness would occur. Because of the foregoing considerations, DR 5–102(A) does not require disqualification of Stephen Kahn or Davis, Hoxie.

Finally, it is not apparent that Automation acted in bad faith in moving to disqualify Associates' counsel or that the motion was totally groundless. Therefore, Automation's request for sanctions pursuant to Rule 11 is denied.

In sum, Associates' motion to amend its complaint is partially granted; Automation's motion to dismiss Counts III–V of the complaint is granted in part; Automation's motion for a more definite statement of Count V is denied as moot; and Automation's motion to disqualify Associates' counsel is denied.

SO ORDERED.