**Robert M. FEERICK, Plaintiff,**

v.

**ARTHUR YOUNG & COMPANY, Arthur Young United States and John Wiley & Sons, Inc., Defendants.**

**No. 89 Civ. 0523 (KTD).**

United States District Court, S.D. New York.

June 26, 1989.

---

Nims, Howes, Collison & Isner, New York City, for plaintiff; Oliver P. Howes, Jr., of counsel.

Carl D. Liggio, Gen. Counsel, Scott M. Univer, Asst. Gen. Counsel, Arthur Young & Company, New York City, for defendants; Robyn L. Neal, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Defendants Arthur Young & Co. and Arthur Young United States (collectively "Arthur Young") move pursuant to Fed.R.Civ. P. 56(c) for summary judgment dismissing the complaint. They also move pursuant to Fed.R.Civ.P. 11 for the imposition of sanctions. For the reasons that follow, the motion for summary judgment is granted and the motion for sanctions is denied.

## FACTS

Plaintiff Robert M. Feerick initiated this action seeking injunctive relief and damages regarding Arthur Young's publication of a book that he alleges violates his rights under the Lanham Act, 15 U.S.C. § 1125(a) (1982), and the Copyright Act, 17 U.S.C. §§ 101–801 (1982 & Supp. V 1987). Feerick also asserts common law claims of misappropriation, conversion, unfair competition, and breach of contract.

Feerick was chairman of the Corporate Development Group of Arthur Young and a general partner of that firm until his termination on March 31, 1988. While employed there Feerick claims to have conceived, designed, and edited a book to be entitled *"A CEO's Guide to Developing the Successful Acquisition Program."* Although Feerick offers no writing evidencing an agreement, he argues that it was clearly understood and agreed between himself and Arthur Young that Feerick would be the designated editor on the cover of the book and that he would receive full credit for this role.

The book consists of chapters written by various authors, some of whom are Arthur Young employees and some of whom are not. The collaborators were originally solicited by Feerick according to an outline he developed. Feerick was then to edit the solicited chapters and write the introduction and a chapter of his own.

In April 1987, Feerick learned that Arthur Young planned to close the department in which Feerick was employed. Feerick sought to purchase the department, but Arthur Young decided not to sell and discharged Feerick. Arthur Young then continued to prepare the book for publication but deleted Feerick's introduction and chapter and changed the book's title to *"The Arthur Young Guide to Mergers and Acquisitions."* Arthur Young also named Richard S. Bibler as the editor based on work he contributed. Feerick was nonetheless to be acknowledged, within the book, for his contributions. In

fact, an acknowledgement at the beginning of the book now states:

> Finally we want to acknowledge the early contribution of Robert M. Feerick, a former Managing Director of the Corporate Development Group of Arthur Young. He recognized that senior corporate managers need a better understanding of the successful acquisition process, and the concept of the Book was his. He recruited many of the authors and reviewed their early drafts.

Univer Aff., Exh. F.

Feerick then moved to enjoin publication of the book. On January 30, 1989, a hearing on the preliminary injunction was held before me. After a day of testimony, I denied the preliminary injunction motion on the record. *See* Transcript of the Proceedings dated January 30, 1989 ("Tr."). My decision was based on my specific findings that all ownership rights to the book belong to Arthur Young, that Feerick could not establish irreparable harm, that his damages were minimal at best, and his chances of recovery no better. Tr. 83–87.

Feerick has since abandoned his Copyright Act claim. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment and Sanctions at 1. He now claims that he will be damaged and Arthur Young will unfairly benefit by publication of the book because it falsely attributes editorship to Bibler and misleadingly includes Arthur Young in the title. He also claims that Arthur Young refused to name him as editor to prevent him from gaining any competitive recognition in the field of mergers and acquisitions. Plaintiff's Statement of Genuine Issues of Material Fact under Rule 3(g), ¶ 7.

## DISCUSSION

Feerick's contributions to the book were made while he was a partner of Arthur Young United States. His actions were therefore subject to the 1982 and, later, the 1986 Articles of Partnership of Arthur Young United States, which Feerick signed. *See* Tr. 71, 83.

The Articles of Partnership expressly state: "No partner, without the prior written consent of the Management Committee shall ... engage in any activity which requires significant time and which involves the payment to such partner individually of any fee, commission, or other compensation for services...." Exhs. G–H, art. XIII–2.

His contention of personal ownership is wholly contrary to the Articles of Partnership, which provide that the partnership retains all rights to any works produced by any of the partners. *Cf. Bear Creek Productions, Inc. v. Saleh,* 643 F.Supp. 489, 493 (S.D.N.Y.1986) (where a contract covers whose trademark will be associated with the product, the contract and not the Lanham Act determines the rights of the parties). I expressly found at the preliminary injunction hearing that whatever work Feerick did on the book he did as an employee of Arthur Young, Tr. 87, and that everyone involved considered the book to be an Arthur Young publication. Tr. 86. Moreover, Feerick admitted that he spent three to four hundred hours working on the book, Tr. 31, and expected that the book would benefit Arthur Young. Tr. 62. Accordingly I held that Arthur Young holds all ownership rights to the book.

■ Feerick's claims of false attribution of editorial credit must also fail. Although such an action exists under § 43(a) of the Lanham Act, *Follett v. New American Library, Inc.,* 497 F.Supp. 304 (S.D.N.Y. 1980), the description of the book as an Arthur Young publication and attribution of editorial credit to Bibler is accurate. Feerick concedes that his introduction to the book, actually drafted by Jon Zonderman on the basis of speeches delivered by Feerick while an Arthur Young partner, has been replaced. Bibler and Zonderman edited the text extensively and other significant revisions were made. In addition, Feerick never sent a draft of his chapter to anyone at Arthur Young. Tr. 45. Thus, the undisputed evidence before me demonstrates that Feerick's contribution to the book is accurately described in the acknowledgement at the front of the book.

■ Finally, Feerick admits that the book was expressly modelled after an earlier Arthur Young publication entitled *Management Guides to Mergers and Acquisitions.* Tr. 54, 56, 58. What Feerick did was basically to borrow someone else's idea and update it. Tr. 86. Because his concept of the book was not novel, he cannot rely on that concept to state a claim under the Lanham Act for failure to attribute editorship. *See Murray v. National Broadcasting Co., Inc.,* 844 F.2d 988, 995 (2d Cir.1988) (ideas that are not novel may be used with impunity and do not require attribution). Indeed, to describe Feerick as the editor of the book in its present form might well be misleading.

■ Because Arthur Young retains all ownership rights in the book, Feerick's common law claims for misappropriation and conversion are without merit. Similarly his claim of unfair competition, which requires "bad faith misappropriation," is inapposite. *See Computer Associates International, Inc. v. Computer Automation, Inc.,* 678 F.Supp. 424, 429 (S.D.N.Y. 1987). Moreover, as no agreement to describe Feerick as editor of the book was ever memorialized, his breach of contract claim must fall as well.

In sum, Arthur Young's motion for summary judgment is granted and the complaint is dismissed. The motion for Rule 11 sanctions is denied. No costs or attorneys fees are to be awarded under the Copyright Act.

SO ORDERED.