**TWIN PEAKS PRODUCTIONS, INC., Plaintiff,**

v.

**PUBLICATIONS INTERNATIONAL, Defendant.**

No. 91 Civ. 0626 (JSM).

United States District Court, S.D. New York.

Nov. 12, 1991.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

Plaintiff, Twin Peaks Productions, Inc. ("TPP") moves for judgment[1] granting plaintiff the injunctive and monetary relief (in a sum to be determined by the Court) requested in the complaint, on its claims for copyright infringement under § 501 of the Copyright Act of 1976, trademark infringement, unfair competition under both § 43(a) of the Lanham Act and New York common law, and violation of § 368–d of the New York General Business Law (injury to business reputation), together with costs, and attorneys' fees.

TPP (formerly named Lynch/Frost Productions, Inc.) is the producer of the television series "Twin Peaks", (the "Program") and owns all rights, title and interest in and to the Program. It also owns the mark "Twin Peaks."

Defendants Publications International, Ltd., ("PIL") and Scott Knickelbine have written and published an unauthorized book entitled "Welcome to Twin Peaks" (the "Book"), which purports to be "A Complete Guide to the Who's Who and What's What" of the Program. Defendant Penguin USA Inc. distributes "Welcome to Twin Peaks," which bears that defendant's SIGNET imprint.

At issue in this case are the two hour premiere and seven subsequent hour-long episodes broadcast weekly in the spring of 1990. The defendants' Book contains a detailed summary of these eight episodes. This summary contains dozens of direct quotations and paraphrases from the copyrighted teleplays of the Program, and also contains detailed descriptions of plot, character, and setting. For example, page 128 of the Book is entitled "The Wit and Wisdom of Agent Copper," and consists entirely of verbatim quotations from plaintiff's copyrighted teleplays. Defendants have not been authorized by, nor paid compensation to, TPP for their use of TPP's "Twin Peaks" mark or the copyrighted material used in defendants' Book.[2]

Plaintiff has authorized publication of two books, entitled *The Secret Diary of Laura Palmer* and *The Autobiography of F.B.I. Special Agent Dale Cooper: My Life, My Tapes.* Further, TPP has authorized the producers of Access Guide travel guides to publish a book entitled "Welcome to Twin Peaks: An Access Guide To the Town." Plaintiff argues that defendants' Book, which contains a summary that is essentially a novelization of the "Twin Peaks" Program, may reduce the market for any authorized "novelization" that TPP would seek to publish.

Plaintiff asserts that as owner of the Program's copyrights, it has the exclusive right to prepare derivative works, and that PIL's publication of "Welcome to Twin Peaks" therefore constitutes a violation of that exclusive right. Moreover, TPP claims that because of the substantial copying found in defendants' Book, defendants have also violated TPP's exclusive right to reproduce or copy its copyrighted works. 17 U.S.C. § 106(1).

---

**1.** At oral argument of the cross-motions for summary judgment, both parties stipulated that there are no factual issues requiring trial and that the Court could decide this action as a matter of law.

**2.** Defendants have been involved in prior litigation relating to its Book. They settled a declaratory judgment action with Simon & Schuster which was pending in the Northern District of Illinois. PIL agreed that "on any future printing of the Book, PIL will ensure that the words 'WELCOME TO' are deleted from the title and the word 'UNAUTHORIZED' shall appear in connection with the title on the front and back covers of the book, the title page and the spine of the Book." PIL also agreed that defendants would have to print the following disclaimer on future editions of the Book: "This Book is not authorized by or connected with the television program "Twin Peaks" produced by Twin Peak Productions, Lynch/Frost Productions, Inc., nor with Propaganda Films, Worldvision Enterprises, Inc. or Capital Cities/ABC, Inc. Television Network Group." The parties agreed that the disclaimer would be 50% larger than on the current edition and that the cover of the Book will contain the designation "A PIL Book."

**1250**

Plaintiff claims further that defendants' use of the phrase "Welcome to Twin Peaks" on the cover of the Book, their use of the phrase "Twin Peaks" in a style and color similar to that used for the title of the Program as broadcast, and their use of other "indicia" of the "Twin Peaks" program in their Book, violate TPP's rights in its "Twin Peaks" mark.[3] Plaintiff contends that such conduct constitutes unfair competition and trademark infringement pursuant to § 43(a) of the Lanham Act and New York common law, and also constitutes dilution and injury to business reputation pursuant to New York General Business Law § 368–d.

*Copyright Act*

Section 106(1) of the Copyright Act provides the owner of a copyright with the exclusive right to "reproduce the copyrighted work in copies ..." 17 U.S.C. § 106(1). This provision has been interpreted as granting the copyright owner the exclusive right to control reproductions in other mediums. Section 106(2) further gives the copyright owner the exclusive right to "prepare derivative works" from its copyrighted material. 17 U.S.C. § 106(2).

■ Clearly TPP is the registered copyright owner of the teleplay of the "Twin Peaks" television programs. Based upon a review of the evidence, it seems just as clear that the defendants' book "Welcome to Twin Peaks" amounts to an infringement upon TPP's exclusive right to prepare copies and/or derivative works.

■ Defendants have directly copied or paraphrased substantial portions of TPP's teleplays. Much of the book consists of detailed description of the plot, setting, and character development of the first eight episodes of "Twin Peaks." Excerpts from episodes are quoted verbatim. A work that is literally similar may be found to be an infringement of copyright. *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539, 548, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588, 599 (1985); *Meredith Corp.*

*v. Harper & Row, Publishers, Inc.,* 378 F.Supp. 686 (S.D.N.Y.), *aff'd,* 500 F.2d 1221 (2d Cir.1974). This Court finds that "Welcome to Twin Peaks" is literally similar to TPP's teleplays and as such infringes upon TPP's exclusive right to reproduce the work.

■ This Court further finds that because "Welcome to Twin Peaks" is based on the teleplay and employs direct quotations and paraphrases, it is a derivative work. The "protection of derivative rights extends beyond mere protection against unauthorized copying to include the right to make other versions of, perform, or exhibit the work." *Mirage Editions, Inc., v. Albuquerque A.R.T. Co.,* 856 F.2d 1341, 1343 (9th Cir.1988), *cert. denied,* 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989). By writing and publishing "Welcome to Twin Peaks," defendants have infringed upon TPP's exclusive derivative rights in violation of § 106(2).

■ Defendants make two arguments. First, defendants assert that there has been no copyright infringement since any use of the allegedly copyrighted material was fair use protected under 17 U.S.C. § 107 (1982). The fair use defense is an equitable rule involving the balancing of the exclusive right of a copyright holder with the public's interest in the dissemination of information. It is not, however, "a license for corporate theft, empowering a court to ignore a copyright whenever it determines the underlying material contains material of possible public importance." *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 471 U.S. at 558, 105 S.Ct. at 2229, *citing Iowa State University Research Foundation, Inc. v. American Broadcasting Co., Inc.,* 621 F.2d 57, 61 (2d Cir.1980).

■ In examining the fair use defense, courts must look at four factors: 1) the purpose and character of the use, including whether such use is commercial, 2) the nature of the copyrighted work, 3) the

---

**3.** The title appears on the Book's front cover against a wooden background just like the opening credits of the Program.

amount and substantiality of the portion used and 4) the effect upon plaintiff's potential market. 3 *Nimmer on Copyright*, § 13.05.

PIL claims that the purpose of the book is educational and that the character of the book is commentary. PIL uses the words educational and commentary too broadly. In determining whether a use should be considered educational, courts "have placed particular emphasis on whether the distribution of the copyrighted work by the alleged infringer 'would serve the public interest in the free dissemination of information and whether their preparation requires some use of prior materials dealing with the same subject matter.'" *Association of American Medical Colleges v. Mikaelian*, 571 F.Supp. 144, 152 (E.D.Pa.1983), *quoting, Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967); *see also Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1530 (S.D.N.Y.1991). Courts also consider whether the purpose of the work is commercial in nature.

■ With this in mind, this Court declines to find this profit motivated recounting of a fictionalized teleplay educational. To conclude otherwise would suggest that any commercial publisher could publish a condensed version of a film script, a novel, or any other copyrighted work invoking the pretext of educational fair use.

PIL further claims that "the 'character' of the book is to convey useful information and critical interpretation about the Program to readers and is thus protected under the first amendment." It cites *Consumers Union of U.S., Inc. v. General Signal Corp.*, 724 F.2d 1044, 1049 (2d Cir. 1983), *reh'g denied*, 730 F.2d 47 (2d Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984) in support of its contention. However, there the court held that verbatim use of information contained in a *Consumer Report* in a television advertisement for a vacuum cleaner was deemed to be of significant public interest and, thus, fair use. The court held that because "facts about the results of CU's indepen-

dent testings" convey important information to consumers a fair use defense would be allowed. Such is not the case here.

The second factor to be considered in determining the applicability of the fair use doctrine is the nature of the work. Certain cases have held that the public interest in the dissemination of knowledge about an event outweighs the copyright owner's rights. These cases have involved situations in which the copyrighted material contains factual information about public events, public figures or information useful to the general public. None of these cases involve a work of fiction, as in the case at bar.

The third factor addresses the amount and substantiality of the portion of plaintiff's work used in relation to the copyrighted work as a whole. Here the book provides synopses for several episodes, lifting many parts verbatim from the script. Thus, the defendant's book utilizes substantial parts of the copyrighted material.

■ The fourth factor is the effect of the work on plaintiff's potential market. The owner of misappropriated copyrighted material need not show an actual adverse effect on its sales, but "need only show that if the challenged use 'should become widespread, it would adversely affect the potential market for the copyrighted work.'" *Harper & Row*, 471 U.S. at 568, 105 S.Ct. at 2234, *quoting Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984). PIL argues that since plaintiff and defendant are engaged in two separate and distinct mediums, the Book in no way competes with the Twin Peaks television show. PIL's argument is disingenuous. TPP has already authorized several books related to the Program, including "The Secret Diary of Laura Palmer" and "The Autobiography of F.B.I. Special Agent Dale Cooper: My Life, My Tapes," and has plans to publish, or authorize the publication of other books related to the program. Thus, "Welcome to Twin Peaks" is in direct competition with defendants' books and other derivative works which TPP has the right to publish in the future.

Finally, PIL makes the argument that their use of TPP's copyrighted teleplays as a source for their book is protected by the first amendment. The law, however, is clear that such first amendment concerns are subsumed within the fair use analysis of § 107. *See Harper & Row*, 471 U.S. at 557, 105 S.Ct. at 2229; *New Era Publications International v. Henry Holt & Co.*, 873 F.2d 576, 584 (2d Cir.1989), *cert. denied*, 493 U.S. 1094, 110 S.Ct. 1168, 107 L.Ed.2d 1071 (1990) (the "fair use doctrine encompasses all claims of first amendment in the copyright field"); *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1100 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) ("we have also stated the general rule that conflicts between interests protected by the first amendment and the copyright laws thus far have been resolved by application of the fair use doctrine," *citing Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 95 (2d Cir.1977), *cert. denied*, 434 U.S. 1014, 98 S.Ct. 730, 54 L.Ed.2d 759 (1978).

### Lanham Act

Plaintiff claims that defendants' use of the name Twin Peaks in the title of its book is actionable under § 43(a) of the Lanham Act. Defendants argue that the Lanham Act should not apply because the title does not mislead as to the source of origin.

The inquiry in an action for trademark infringement is whether there is any likelihood that an appreciable number of "ordinary prudent" purchasers are likely to be misled or merely confused as to the source of the goods in question. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 (2d Cir.1988). Upon review of the evidence, this Court concludes that a substantial number of reasonably prudent purchasers, on seeing the name Twin Peaks as part of the title of the Book would be led to believe that plaintiff was the source of the goods. Accordingly, we find that the Lanham Act was violated.

PIL makes the argument that its disclaimer alleviates any confusion as to source because it clearly designates the source of the product. An effective disclaimer can help reduce the potential for consumer confusion caused by an allegedly infringing product if it clearly designates the source of the product. *Rosenfeld v. W.B. Saunders*, 728 F.Supp. 236, 243 (S.D.N.Y.), *aff'd*, 923 F.2d 845 (2d Cir.1990). The question before this Court is whether PIL's disclaimer was effective. This Court concludes that it was not.

### Unfair Competition

The standards for a finding of unfair competition under N.Y. law are similar to those applied under § 43(a) of the Lanham Act: the essence of unfair competition under New York common law is "the bad faith misappropriation of the labors and expenditures of another likely to cause confusion or to deceive purchasers as to the source of the origin of goods." *Computer Associates International, Inc. v. Computer Automation, Inc.* 678 F.Supp. 424, 429 (S.D.N.Y.1987). For the same reasons set forth above, this Court finds that PIL has engaged in unfair competition in violation of New York law.

### New York State "Antidilution" Statute

Under the New York Business Law § 368–d (McKinney 1984), *equitable relief* will be granted in cases of infringement of a mark provided that there is proof of "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name." TPP's reliance on this statute is misplaced. Assuming that the mark has acquired a secondary meaning which is capable of dilution, plaintiff has not shown that defendants' continuing use will have an adverse effect upon the value of plaintiff's mark. Plaintiff has acknowledged that it has no evidence of actual confusion and has not alleged any "deceptive" practice. *See King Research, Inc. v. Shulton, Inc.*, 324 F.Supp. 631, 638 (S.D.N.Y.1971), *aff'd*, 454 F.2d 66 (2d Cir.1972).

Plaintiff has not presented any evidence that defendants' Book has "blurred" or "tarnished" the mark and thus, it has not plead the requisites necessary to maintain

this claim. *See Rossner v. CBS, Inc.*, 612 F.Supp. 334 (S.D.N.Y.1985).

*Conclusion*

TPP has alleged the elements necessary to support its copyright and trademark infringement claims. The Court therefore grants summary judgment in favor of TPP on the issue of liability.

The parties are directed to appear for a conference with the Court on November 21, 1991 at 4:30 p.m.

SO ORDERED.