THE ECHO DESIGN GROUP,
INC. Plaintiff,

v.

ZINO DAVIDOFF S.A., Davidoff & Cie
S.A., Davidoff of Geneva (N.Y.), Inc.,
Coty Inc. and Lancaster Group U.S.
LLC. Defendants.

No. 03 Civ. 6739(VM).

United States District Court,
S.D. New York.

Sept. 22, 2003.

Kenneth I. Schacter, Timothy John Stephens, Bingham, McCutchen, L.L.P., New York City, for plaintiff.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Echo Design Group, Inc. ("Echo") filed a motion (the "Motion") for a preliminary injunction and temporary restraining order on September 5, 2003 seeking to bar defendants Zino Davidoff S.A., Davidoff & Cie S.A., Davidoff of Geneva (N.Y.), Inc. (collectively, "Davidoff"), Coty Inc. ("Coty") and Lancaster Group U.S. LLC ("Lancaster," and together with Davidoff and Coty, "Defendants") from using the trademarked name Echo on a series of men's fragrance and cosmetic products (the "Davidoff Products").

An evidentiary hearing was held before the Court on September 15, 2003 (the "Hearing"). At the end of the Hearing, the Court ruled that it was not persuaded that Echo met the necessary legal standards for the Court to grant the Motion, but was convinced that Echo's complaint had sufficient merit to warrant a trial to resolve the matter. With reference to the record (the "Record") created at the Hearing, the Court proceeds to briefly explain its findings, reasoning and conclusions.

## I. *FACTS*

### A. *ECHO'S BACKGROUND*

Echo is an eighty-year old fashion accessories and home design goods manufacturer whose self-described high-end products (the "Echo Products") include scarves, rainwear, bedding, and bath products. Echo alleges that it has marketed and sold the Echo Products under the trademark ECHO, and is the owner and holder of several federal registrations of the ECHO mark and variations on such mark (collectively, the "Echo Trademarks") for use on and in connection with the Echo Products.

Echo claims that for the past seven years, it has used a "custom-designed" and trade-marked font style called Copperplate in connection with the Echo Trademarks on, among other things, advertisements and packaging. Over the past five years, Echo contends, it has spent nearly $4 million on such advertising in several national fashion and home decorating magazines such as Town & Country and Marie Claire.

Echo also alleges that the Echo Products are sold in upscale department stores such as Saks Fifth Avenue and Bloomingdales, as well as high-end fashion boutiques. Echo avers that over the past ten years, wholesale sales of the Echo Products have exceeded $287 million.

## B. *DEFENDANTS' BACKGROUND*

Davidoff is a tobacco manufacturer and marketer whose products over the past ninety years have slowly evolved from fine cigars to include other luxury products, including fragrances. Under license from Davidoff, Lancaster manufactures and sells DAVIDOFF fragrances and personal care products. Recently, these products have grown to include the Davidoff Products, marketed under the name ECHO DAVIDOFF.

Defendants contend that the name Echo was chosen after a European marketing study in May of 2002. Defendants also allege that in advertisements and packaging for the Davidoff Products, the word ECHO is displayed in the "fairly common" Din Bold font, in close proximity or next to the DAVIDOFF script logo. Defendants plan to advertise the Davidoff Products in both men's publications such as GQ and Maxim as well as women's magazines such as Cosmopolitan. Defendants contend that the promotional campaign is still in development, but will not include any of the advertisements identified by Echo in the Motion.

Defendants launched the Davidoff Products on December 12, 2002 in Berlin, and have slowly expanded sales to include several international locations, including Italy, Israel, Australia and Canada. Defendants claim that the only sales in the United States so far have been in duty-free shops, and that an official launch of the Davidoff Products will not occur until February 2004 (the "Release Date"), at which point the Davidoff Products will be sold at department stores such as Filene's and Macy's, but not at "speciality" department stores such as Bloomingdale's and Saks Fifth Avenue.

## C. *ECHO'S MOTION*

In the Motion, Echo contends that Defendants plan to market the Davidoff Products using the marks ECHO and ECHO DAVIDOFF. Echo also alleges that the Davidoff Products are already for sale to consumers through fragrance-related web sites, in addition to at least one location in Honolulu, Hawaii. Echo describes the packaging and promotion of the Davidoff Products as using the mark ECHO in large, block letters that mimic the Copperplate font trademarked and used by Echo. Moreover, Echo claims that Davidoff's web site used Echo's full company name—"ECHO DESIGN"—in promoting the Davidoff Products.

In asking for relief from this Court, Echo argues that the Davidoff Products will unfairly compete with the Echo Products and confuse consumers as to the origin of the Davidoff Products. In addition, Echo contends that Defendants' use of the ECHO mark blocks Echo from expanding into the area of fragrances, which Echo claims it intends to exploit, as evidenced by Echo's April 8, 2003 trademark application for the use of ECHO on and in connection with, among other things, perfumes and colognes.

## D. *DEFENDANTS' RESPONSE*

Defendants respond to the Motion with several arguments. First, they contend that Echo's trademark infringement and unfair competition claims fail because there is no likelihood of confusion. Second, Defendants argue that Echo's dilution claim fails because ECHO is not a famous mark and Echo has made no showing of actual dilution. Third, Defendants aver that Echo has made no credible showing of irreparable harm. Finally, Defendants allege that a preliminary injunction would cause Defendants severe hardship, while denial of the injunction would not harm Echo.

## II. *LEGAL DISCUSSION*

### A. *STANDARD OF REVIEW*

In order to prevail on a motion for a preliminary injunction and/or temporary restraining order, a party must establish irreparable harm and either (1) a likelihood of success on the merits of the underlying claim or (2) sufficiently serious questions going to the merits of the claim and a balance of hardships tipping decidedly in the moving party's favor. *See Kamerling v. Massanari,* 295 F.3d 206, 214 (2d Cir. 2002).

### B. *SUCCESS ON THE MERITS*

#### 1. *Likelihood of Confusion*

■ Echo first claims that Defendants' use of ECHO as the name of the Davidoff Products violates Sections 32(1) and 43(a) of the Lanham Trademark Act of 1946, 15 U.S.C. § 1114(1)(a) (the "Lanham Act"), which serve to protect registered[1] and unregistered[2] trademarks, respectively, from consumer confusion regarding a product's source or sponsorship. In order to establish a trademark infringement claim under either of the aforementioned sections, a plaintiff must show that (1) it has a valid mark that is entitled to protection of the law and (2) the defendants' actions are likely to confuse the public as to the origin of the products in question. *See Cache, Inc. v. M.Z. Berger & Co.,* No. 99 Civ. 12320, 2001 WL 38283, at *4 (S.D.N.Y. Jan.16, 2001).

■ Echo has offered sufficient evidence on the Record that the Echo Trademarks are validly registered, and Defendants do not dispute that the Echo Trademarks constitute a valid mark for purposes of the first element of the trademark infringement test. What Defendants do contest is that there is any likelihood of confusion from Defendants' sales of the Davidoff Products.

The Second Circuit has set forth eight nonexclusive factors to be considered in deciding whether a likelihood of confusion exists in such a factual situation:

1) the strength of the plaintiff's mark, 2) the degree of similarity between the plaintiff's and defendant's marks, 3) the proximity of the products, 4) the likelihood that the plaintiff will "bridge the gap" between the two products, 5) actual confusion between the two marks, 6) the defendant's good faith in adopting its mark, 7) the quality of the defendant's products, and 8) the sophistication of buyers of the plaintiff's and defendant's goods and services.

*See Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). The first five factors as well as the last factor relate directly to the likelihood of consumer confusion, while factors numbers six and seven are more pertinent to issues other than likelihood of confusion, such as harm to plaintiff's reputation and choice of remedy. *See Virgin Enterprises Ltd. v. Nawab,* 335 F.3d 141,

---

1. Section 32(1) of the Lanham Act reads in pertinent part that an action for trademark infringement arises where "[a]ny person ... without the consent of the registrant ... use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... [and] such use is likely to cause confusion...." 15 U.S.C. § 1114(1).

2. Section 43(a) of the Lanham Act reads in pertinent part that an action for trademark infringement arises where a person uses "in connection with any goods ... any word, term, name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive ... as to the origin, sponsorship, or approval of ... his or her goods ... by another person." 15 U.S.C. § 1125.

146–47 (2d Cir.2003). The *Polaroid* analysis is not a "mechanical measurement[;] ... [the] court should focus on the ultimate question of whether consumers are likely to be confused." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114, 119 (2d Cir.2001)

At the Hearing, the Court and the parties engaged in a rigorous discussion about whether Echo met the standards articulated by the *Polaroid* test to establish likelihood of confusion. In a decision more fully explained on the Record, the Court indicated that it was not persuaded that Echo had sufficiently demonstrated for the purposes of prevailing on a motion for a preliminary injunction that Defendants' use of the word Echo would cause a likelihood of confusion among ordinarily prudent consumers. *See Morningside Group Ltd. v. Morningside Capital Group. L.L.C.*, 182 F.3d 133, 140 (2d Cir.1999) (finding that similarity between plaintiff and defendant's company names "would be likely to cause confusion among ordinarily prudent consumers").

### 2. *Trademark Dilution*

■ The Lanham Act allows the owner of a famous trademark to seek "an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). "To obtain relief, a trademark owner must show that its mark is both famous and distinctive." *New York Stock Exchange, Inc. v. New York, New York Hotel, LLC*, 293 F.3d 550, 556 (2d Cir.2002). Echo argues that its mark is strong and distinctive, while Defendants argue that not only is the mark not famous, but it has been diluted already by the many other companies and products bearing the name Echo.

Again, as more fully explained on the Record, the Court indicated that it was not persuaded that Echo had sufficiently demonstrated for the purposes of prevailing on a motion for a preliminary injunction that the Echo Trademarks were famous and distinctive as such terms are used for purposes of the Lanham Act.

### 3. *Unfair Competition*

■ Echo also brings a unfair competition claim under New York law. "[T]he essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods.'" *Rosenfeld v. W.B. Saunders, A Division of Harcourt Brace Jovanovich, Inc.*, 728 F.Supp. 236, 249–50 (S.D.N.Y. 1990) (quoting *Computer Assocs. Int'l, Inc. v. Computer Automation, Inc.*, 678 F.Supp. 424, 429 (S.D.N.Y.1987)), *aff'd*, 923 F.2d 845, 1990 WL 252542 (2d Cir.1990). In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief. See *W.W.W. Pharmaceutical*, 984 F.2d at 576 (citation omitted). Additionally, there must be some showing of bad faith. *See Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980).

■ As with the previous two claims, the Court indicated more fully on the Record that it was not persuaded that Echo had sufficiently demonstrated for the purposes of prevailing on a motion for a preliminary injunction that Defendants' use of the word Echo constituted unfair competition under New York law.

### C. *IRREPARABLE HARM*

■ To establish irreparable harm in a preliminary injunction, the moving party

must demonstrate not just the mere possibility of irreparable harm, but "that it is likely to suffer irreparable harm if equitable relief is denied." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir.1990). The existence of a likelihood of confusion in a trademark case is considered strong evidence of irreparable harm because damage to reputation is difficult to prove or quantify. *See Church of Scientology Int'l v. Elmira Mission of Church of Scientology*, 794 F.2d 38, 41 (2d Cir.1986). Thus, courts in the Second Circuit have allowed a showing of likelihood of confusion to establish both a likelihood of success on the merits and irreparable harm, assuming that plaintiff has a protectable mark. *See Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988); *see also Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 66 (2d Cir.1985) (quoting *McGregor–Doniger, Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1130 (2d Cir.1979)) (noting that irreparable injury may be found where " 'there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.' ").

As discussed above, the Court indicated at the Hearing that Echo did not meet the standards articulated in *Polaroid* to demonstrate adequately that a likelihood of confusion exists for the purposes of prevailing on a motion for a preliminary injunction. Moreover, even assuming a likelihood of confusion, the Court was not satisfied that Echo would suffer irreparable harm prior to the Release Date because consumers would not actually be exposed to the Davidoff Products until the Release Date. Consequently, the Court scheduled a trial on the merits to commence on January 12, 2004 in order to allow both parties sufficient time to conduct discovery and argue their cases before the Release Date.

## III. *ORDER*

For the reasons set forth above, it is hereby

**ORDERED** that Echo Design Group, Inc.'s motion for a preliminary injunction seeking to enjoin Defendants from using the trademarked word Echo for Defendants' products is denied; and it is further

**ORDERED** that parties are scheduled to appear before this Court at 9:00am on January 12, 2004 for a trial on this matter.

**SO ORDERED.**